UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
PAUL MOORE,

|  | Docket No. 15-CV-06600 |
|---|---|
| **Plaintiff,** | **(GBD)(JLC)** |
|  | **PLAINTIFF'S THIRD** |
| -against- | **AMENDED COMPLAINT** |

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, STEPHEN
WETTENSTEIN in his official and individual capacity,
MICHELE CLIFFORD, in her official and individual capacity,
NADINE PINNOCK, in her official and individual capacity,
PATRICIA LeGOFF, in her official, SHON BROWN in his
official and individual capacity and RENEE JOHNSON, in her
official and individual capacity,

***JURY TRIAL IS DEMANDED***

Defendants.

-------------------------------------------------------------------------X

Plaintiff, PAUL MOORE, by and through his attorneys, the LAW OFFICES OF

FREDERICK K. BREWINGTON, as and for his Amended Complaint, as per consent of the

Defendants and leave by this Court, against the Defendants THE CITY OF NEW YORK, NEW

YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN in his official and

individual capacity, MICHELE CLIFFORD, in her official and individual capacity, NADINE

PINNOCK, in her official  and individual capacity, PATRICIA LeGOFF, in her official, SHON

BROWN in his official and individual capacity and RENEE JOHNSON, in her official and

individual capacity, states and alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil action seeking monetary relief, including past and on going economic

loss, injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements,

costs and fees)  for violations of the Plaintiff's rights, brought pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. (as amended), New York State Human Rights

Executive Law § 296, New York City Human Rights Law, N.Y. City Admin. Code §§8-101 to 131,

42 U.S.C.§ 1981, 42 U.S.C.§ 1983, 42 U.S.C.§ 1985 and § 1986,and other state causes of action.

      2.      Specifically, the Plaintiff alleges that the Defendants, THE CITY OF NEW YORK,

NEW   YORK CITY DEPARTMENT OF CORRECTION, intentionally, knowingly and

purposefully, negligently, carelessly, wantonly, recklessly, acting individually and in conspiracy with

each other, sought to and did fail to properly supervise, promulgated policies and directed and

encouraged its agents to carry out such policies which Defendants knew to be detrimental to

Plaintiff, and did wrongfully deprive Plaintiff of his employment, position, promotion, advancement

and title through a pattern of discrimination, retaliation, misrepresentation, misinformation,

harassment and character assassination, and fostered an environment that allowed for Plaintiff to be

harassed and discriminated against, creation of a hostile workplace, abuse and manipulation of laws,

rules, and regulations on the basis of Plaintiff's religion, race, color and gender and opposition to

prior discriminatory acts. Further, Defendants have denied proper "Recommendation For

Consideration Of Application For Pistol License For Retiring Peace [Police] Officer" forms and/or

"*Good Guy Letters*" following retirement, due to injury and or disability and have deny Plaintiff's

right to bear or carry arms and in preventing the issuance of hand gun/pistol licenses and denying

a "good guy letter" to Plaintiffs - specifically, because he each retired as a result of said disabilities

and in retaliation for raising issues of discrimination and opposing discriminatory actions against

him.

2

3.        Plaintiff PAUL MOORE alleges that Defendants THE CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION, together with their agents, servants and employees, purposefully and intentionally discriminated against Plaintiff based upon his race, color, religion, disability, creating a hostile work environment and in retaliation for having opposed discriminatory practices.

4.        Plaintiff alleges that Defendant THE CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiffs of, *inter alia*: [1] the terms, conditions and privileges of their Retired Status, [2] the terms, conditions and privileges of their citizenship, [3] his personal property, [4] his property rights, [5] his 2nd and 14th Amendment rights, [6] his retirement rights and/or contractual rights, and [7] personal safety, through unlawful violation of laws, violation of rules, differential treatment, discrimination, retaliation, harassment and on the basis of his status as disabled persons, which they created and/or knowingly exacerbated.

5.        Defendants herein purposefully and intentionally sought to deprive Plaintiff of, *inter alia*: [1] right to be issued permits/licences to own, possess and/or carry hand guns and/or pistols; [2] right to good faith determination as to his respective rights to carry arms; [3] rights afforded to him as retiring members of the NEW YORK CITY DEPARTMENT OF CORRECTION; [4] rights to equal protection and/or to be free of discrimination and retaliation bases upon his statuses; [5] rights to property and ability to provide personal safety for himself and his family; [6] right to due process; [7] right to be free from limitations being placed on his ability to earn additional income.

4.        Said acts were done knowingly with the consent and condonation of Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, together with

3

their agents, servants and employees, with the intended and expressed purpose of punishing,

silencing, isolating, removing and violating the rights of Plaintiff as protected by statutes, rules and

regulations.   Said activity was known to government and policy makers and was accepted and

supported as policy, practice and custom.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343 and 42

U.S.C. § 2000(e).

6.     This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's

State law claim pursuant to 28 U.S.C. § 1367.

7.     Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b),

based on the fact that the Defendant City of New York maintains its central place of business.

8.     As a result of Plaintiff PAUL MOORE's filing of a charge of discrimination

internally with the U.S. Equal Employment Opportunity Commission, an EEOC Charge No. of 520-

2014-00825 was assigned to Plaintiff's Charge. A Notice of Right to Sue was issued on or about

June 3, 2015 by the U.S. Equal Employment Opportunity Commission with regard to EEOC Charge

No. 520-2014-00825 and received by Plaintiff on or about June 8, 2015 (copy annexed hereto).  As

of the filing date of the initial complaint, ninety days from the date of receipt of the Notice of Right

to Sue had not yet passed.

9.     On or about February 6, 2014, Plaintiff PAUL MOORE properly filed a charge of

discrimination, with the U.S. Equal Employment Opportunity Commission (hereinafter referred to

as "EEOC"), which was filed under Charge No.  520-2014-00825 , against Defendants CITY OF

NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION charging unlawful

4

discriminatory practice relating to employment for discrimination based upon his race, color, religion and retaliation for opposing discriminatory practices and disability. More specifically, Plaintiff PAUL MOORE, alleged that the Defendants engaged in unlawful discriminatory practices in employment by denying equal terms, conditions and privileges of employment because of his race, color, gender, religion, and retaliation for opposing discriminatory practices following his settlement of a previous case beginning through March 2013 through and including the present time on the filing of this Amended Complaint.

10.     On or about August 20, 2015, Plaintiff filed a Summons and Complaint, *Pro Se* with the Southern District of New York commencing the instant action.

**PARTIES**

11.     Plaintiff, PAUL MOORE (hereinafter "MOORE" OR "Plaintiff"), is an African-American male citizen of the United States and a resident of New York State. Plaintiff is a member of the Pentecostal Christian Religion. Plaintiff has been employed by the CITY OF NEW YORK and the NEW YORK CITY DEPARTMENT OF CORRECTION from on or about February 10, 1999 to 2015 when he retired.

12.     Plaintiff, PAUL MOORE, was employed and/or formerly employed by Defendants CITY OF NEW YORK and the NEW YORK CITY DEPARTMENT OF CORRECTION at all times relevant to the Complaint and achieved the rank of Captain prior to his retirement. Plaintiff suffered and/or was caused to suffer injuries and/or disabilities while employed with Defendants. As a result of his disabilities, Plaintiff reported the injury(ies), as was his professional, contractual and common-law duty, and informed Defendants of his disabilities and thereafter, lawfully, properly and formally declared disabled for purposes of retirement. Plaintiff herein was a union members and was Party

5

to a standing Collective Bargaining Agreement ("CBA") as well as bound to adhere to the provisions set forth in Defendants' rules, regulations, operations, and policies of the City of New York and State of New York.

13.     At all times hereinafter mentioned, Defendant, CITY OF NEW YORK, (hereinafter "CITY") was, and still is a municipal body of the State of New York, with offices in Manhattan, New York. Said municipality exists and operates under and by virtue of the laws of the State of New York.

14.     Defendant NEW YORK CITY DEPARTMENT OF CORRECTION (hereinafter "CORRECTION" OR "DEPARTMENT") is a municipal division of Defendant CITY OF NEW YORK, empowered to enforce ordinances, rules and regulations for the CITY OF NEW YORK, its agencies and employees. It is charged with overseeing the implementation of and compliance with CITY, State and Federal rules, civil service rules, laws and regulations, and further charged with acting according to said rules, regulations and laws. CORRECTION maintains offices at 75-20 Astoria Blvd., East Elmhurst, NY 11370.

15.     Defendant NEW YORK CITY DEPARTMENT OF CORRECTION acts as the agent for THE CITY OF NEW YORK in the area of law enforcement and supervision of incarcerated persons in the jails of the City of New York, including the jails at Rikers Island Correctional Facility for which it is ultimately responsible. Said entity is empowered to enforce, prescribe and amend suitable rules and regulations for appointments, promotions, certifications and transfers, and is charged with overseeing the implementation of said rules and regulations.

16.     Defendant STEPHEN WETTENSTEIN is a white male, and at all times relevant to this complaint, served as Warden of the NEW YORK CITY DEPARTMENT OF CORRECTION.

6

Upon information and belief, Defendant WETTENSTEIN retired in or about January 2014 and was prior to his retirement  a policymaker within the CITY OF NEW YORK, interacts with other CITY OF NEW YORK policymakers, and is charged with the duties of oversight and decision making in CORRECTION its employees including but not limited to Plaintiff.  Defendant WETTENSTEIN also controlled some aspects of Plaintiff's  compensation, terms, conditions, benefits and/or privileges of employment at the NEW YORK CITY DEPARTMENT OF CORRECTION. At all times relevant, Defendant WETTENSTEIN was further charged with  ensuring the implementation of, and compliance with, City, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws. Defendant WETTENSTEIN was noticed about, and directly participated in, the systemic denial of rights, discrimination and improper treatment that occurred against Plaintiff.

17.     Defendant MICHELE CLIFFORD (hereinafter "CLIFFORD"), is a female, and at all times relevant to this complaint, served as a Deputy Warden of the NEW YORK CITY DEPARTMENT OF CORRECTION. Upon information and belief, Defendant CLIFFORD, is/was a policymaker within the CITY OF NEW YORK, interacts with other CITY OF NEW YORK policymakers, and is charged with the duties of overseeing the CORRECTION'S employees and employee-management relations.

18.     CLIFFORD , is further charged with ensuring the implementation of, and compliance with, CITY, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws.

19.     Upon information and belief, while serving as Deputy Warden CLIFFORD  was noticed about, and participated in, the systemic discrimination that occurred against Plaintiff and by

7

the CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION and had

the authority, power and capacity to end said systemic abuses, yet failed to do so.

20.    Defendant NADINE PINNOCK (hereinafter "PINNOCK"), is a female, and at all

times relevant to this complaint, served/serves as a Deputy General Counsel of the NEW YORK

CITY DEPARTMENT OF CORRECTION. Upon information and belief, Defendant PINNOCK,

is a policymaker within the CITY OF NEW YORK, interacts with other CITY OF NEW YORK

policymakers, and is charged with the duties of overseeing the CORRECTION'S employees and

employee-management relations.

21.    PINNOCK is further charged with ensuring the implementation of, and compliance

with, CITY, State and Federal rules, laws and regulations, and is further charged with acting

according to said rules, regulations and laws.

22.    Upon information and belief, while serving as a Deputy General Counsel at the NEW

YORK CITY DEPARTMENT OF CORRECTION, PINNOCK was noticed about, and participated

in, the systemic discrimination that occurred against Plaintiff by the CITY OF NEW YORK and

NEW YORK CITY DEPARTMENT OF CORRECTION and had the authority, power and capacity

to end said systemic abuses, yet failed to do so.

23.    Defendant PATRICIA LeGOFF (hereinafter "LeGOFF") is a white female, and at

all times relevant to this complaint, served/serves as a EEO Officer at DOC of the NEW YORK

CITY DEPARTMENT OF CORRECTION. Upon information and belief, Defendant LeGOFF, is

a policymaker within the CITY OF NEW YORK, interacts with other CITY OF NEW YORK

policymakers, and is charged with the duties of overseeing the NEW YORK CITY DEPARTMENT

OF CORRECTION'S employees and employee-management relations.

24.    LeGOFF is further charged with ensuring the implementation of, and compliance with, CITY, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws.

25.    Upon information and belief, while serving as an EEO Officer at the NEW YORK CITY DEPARTMENT OF CORRECTION, LeGOFF was noticed about, and participated in, the systemic discrimination that occurred against Plaintiff by the CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION and had the authority, power and capacity to end said systemic abuses, yet failed to do so.

26.    Defendant SHON BROWN (hereinafter "BROWN") is a male, and at all times relevant to this complaint, served/serves as the Assistant Deputy Warden of the NEW YORK CITY DEPARTMENT OF CORRECTION. Upon information and belief, Defendant BROWN is a policymaker within the CITY OF NEW YORK, interacts with other CITY OF NEW YORK policymakers, and is charged with the duties of overseeing the CORRECTION'S employees and employee-management relations. BROWN also controls some aspect of Plaintiff's compensation, terms, conditions, benefits and/or privileges of employment at the NEW YORK CITY DEPARTMENT OF CORRECTION.

27.    SHON BROWN is further charged with ensuring the implementation of, and compliance with, CITY, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws.

28.    Upon strong information and belief, while serving as Assistant Deputy Warden at the NEW YORK CITY DEPARTMENT OF CORRECTION, BROWN was noticed about, and participated in, the systemic discrimination that occurred against Plaintiff by the CITY OF NEW

9

YORK and NEW YORK CITY DEPARTMENT OF CORRECTION and had the authority, power and capacity to end said systemic abuses, yet failed to do so.

29.     Defendant RENEE JOHNSON(hereinafter "JOHNSON") is a female, and at all times relevant to this complaint, served/serves as the Assistant Deputy Warden of the NEW YORK CITY DEPARTMENT OF CORRECTION. Upon information and belief, Defendant BROWN is a policymaker within the CITY OF NEW YORK, interacts with other CITY OF NEW YORK policymakers, and is charged with the duties of overseeing the CORRECTION'S employees and employee-management relations. JOHNSON also controls some aspect of Plaintiff's compensation, terms, conditions, benefits and/or privileges of employment at the NEW YORK CITY DEPARTMENT OF CORRECTION.

30.     JOHNSON is further charged with ensuring the implementation of, and compliance with, CITY, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws.

31.     Upon information and belief, while serving as Assistant Deputy Warden at the NEW YORK CITY DEPARTMENT OF CORRECTION, JOHNSON was noticed about, and participated in, the systemic discrimination that occurred against Plaintiff by the CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION and had the authority, power and capacity to end said systemic abuses, yet failed to do so.

## FACTUAL ALLEGATIONS

32.     Plaintiff PAUL MOORE is an is an African-American male who belongs to and has ministerial duties in the Pentecostal Christian Religion. As a New York City Correction Captain Plaintiff is defined as a Police Officer under NYS Criminal Procedure Law §2.10 and §1.20

33.     Plaintiff PAUL MOORE, Correction Captain, had been employed by the Defendants, the CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION from February 10, 1999 to his retirement in 2015.

34.     As an employee of the CITY, Plaintiff PAUL MOORE, was know to be a person of faith practicing his religion and a ordained Minister of the Gospel and a Presiding Elder over ministries in his church. He was also a superior officer who was respected and worked hard to achieve his status and position as Captain.

35.     While employed by CORRECTION, Plaintiff was statutorily exempt from the crime of illegal possession of a firearm under Penal Law Section 265.20.

36.     While employed by the CORRECTION, Plaintiff was able to possess his duty firearm and/or any personal firearms under Penal Law Section 265.20.

37.     In order to purchase a firearm while employed, including personal firearms not intend for work, and firearms now illegal to the general public such as assault rifles, Plaintiff would present his Law Enforcement identification card, complete a Federal Background check, and be permitted to purchase the firearm.

38.     At the time that the Plaintiff applied for his retirement from his employment, Plaintiff also applied for a pistol permit and/or a "good guy letter," from the CORRECTION, which would allow him to possess and carry a pistol as a retiree.

11

39.     Plaintiffs application was delayed and then claimed to be lost and the ignored which amounted to the same as a denial by Defendants. Defendant's.  There is no good reason for this part of Plaintiff's retirement paper work to be treated differently and have been ignored but to harm and punish Plaintiff.

40.     Plaintiff's injuries identified herein were not the type of injuries that prevented or hindered Plaintiff from owning, operating and/or securing a firearm - as medically documented.

41.     Plaintiff was a Peace Officers of high moral character, elevated rank and did not suffer from any mental disabilities and/or impairments that adversely affect his ability to own operate and/or secure a firearm.

42.     Deprivation of Plaintiff's property and the loss of the lawful ability to possess a pistol in the home upon retirement required governmental  due process in relation to the "good guy letter".

43.     Issuance of the "good guy letter" is a ministerial task.

44.     Prior to March 2013, Plaintiff had several internal EEO charges filed with CORRECTION and a prior EEOC Charge of Discrimination that alleged and provided evidence of the wrongful and discriminatory actions against Plaintiff by CITY, CORRECTION and a number of its employees.

45.     In or about March 22, 2013 Plaintiff  settled my previously claims with Defendants and hoped that he would be treated fairly and not discriminated against again or be retaliated against by the CITY, CORRECTION or any of its employees.  Unfortunately, following his settlement, Plaintiff has once again been the victim of discriminatory and retaliatory treatment.

12

46.     Plaintiff has been harassed, unfairly targeted in an investigation, had disciplinary charges filed against him (but not informed of same in a timely manner), twice denied a reasonable request for a favorable transfer, denied religious accommodations and then denied the ability to posses my firearm upon retirement due to my disabled status.

47.     In or about January 2013 Plaintiff was denied his request for a favorable transfer to the Adjudications Department as a Captain with the Law Department of CORRECTIONS. Despite being the most-qualified for this position Plaintiff was denied.

48.     Contrary to normal practices, Plaintiff was interviewed for the position by Defendant PINNOCK. PINNOCK did not generally interview candidates for this position. Her involvement in the process was intended intimidate Plaintiff and was not only interference with Plaintiff's candidacy, but was clearly retaliatory as PINNOCK was the individual dealing with the EEOC charges and settlement at that time.

49.     Plaintiff again applied for a position within the Adjudication Department in July 2013 and was again denied in October of 2013. Once again, Plaintiff was the most qualified candidate an rather than granting him the position, CORRECTION brought trumped-up disciplinary charges against Plaintiff as a pretext to discriminate and retaliate and not selecting Plaintiff for the position for which he was qualified.

50.     The charges were clearly pretextual as the charges allegedly dated back to November and June of 2013, but were not promptly presented to Plaintiff. In fact, Plaintiff was first informed of any such charges,  when his candidacy was almost undeniable, in October of 2013 when the decision was to be made for the position for which Plaintiff had applied.

51.    In or about April 2013, in further discrimination and retaliation, CORRECTION, through its investigators increased their investigation against Plaintiff on a claim of "use of force" that allegedly dated back to an incident in November 2012. Such an investigation should have been concluded well before the April 2013 time, but it was not. In fact, CORRECTION intended to harass and retaliate against Plaintiff for previously opposing discrimination and settling his previous case. Plaintiff learned in October of 2013 that this investigation on the November 2012 incident had resulted in disciplinary charges against him that had not been presented to him.

52.    In June of 2013, Defendant WETTENSTEIN cancelled an ongoing religious accommodation. This accommodation was well known and recognized by Defendants, yet it was cancelled to harm, harass and discriminate against Plaintiff as a further act of retaliation. Plaintiff had successfully fulfilled his duties after having been previously granted the accommodation for months. There was no good faith non-discriminatory or non-retaliatory reason for the recession by WETTENSTEIN.    In fact, when Plaintiff pleaded and explained the accommodation to WETTENSTEIN, he summarily refused to allow it.  WETTENSTEIN and other Defendants knew that by denying the previously allowed accommodation that Plaintiff's schedule would be impacted such so that it would affect his ability to minister to his congregation and attend to service and their needs on Friday nights and Saturdays.

53.    Within days of this action against Plaintiff, he was falsely accused of threatening Defendant BROWN. This false claim resulted in Plaintiff be subjected to a mental evaluation and an investigation. Despite Plaintiff insistence that he was the subject of false and fabricated charges, Defendants refused to consider Plaintiff's complaint that BROWN was lying, Plaintiff's complaints were ignored and not acted upon. While Plaintiff was subjected to harsh and abusive treatment,

14

Defendants refused to subject BROWN to any investigation or mental evaluation.

54.     Plaintiff learned in October 2013 that this incident resulted in disciplinary charges, which had not been presented to Plaintiff prior to that time. Plaintiff became the subject of multiple levels of abuse and scrutiny which he had not been subjected to in this fashion prior to opposing acts of discrimination and retaliation and filing his complaints.

55.     In July of 2013 Defendant JOHNSON began to repeatedly alter, modify and change without request by Plaintiff and without his input. When Plaintiff raised issue about this unwarranted and unprecedented altering of his schedule, Plaintiff was subjected to disciplinary charges despite his complaint of mistreatment, retaliation and abuse of authority as same related to JOHNSON'S conduct.

56.     On June 14, 2013, at approximately 2:20 p.m., Plaintiff writer was informed by Deputy Warden Jacqueline Brantley that Defendant WETTENSTEIN notified her that he was disapproving the Religious Accommodation that was previously approved.

57.     Plaintiff was then summoned to the Warden's office, at which time Plaintiff was told that he, the Warden, was made aware of a meeting Defendant CLIFFORD had with a number of Captains and that she informed the Warden that they were complaining that Plaintiff was not being stuck on Fridays and she did not think it was fair, and that he agreed with the Deputy Warden. Warden WETTENSTEIN then stated, "*I don't feel that it is fair to the other Captains that you are excused from overtime on Fridays because of church.*" Plaintiff then responded, "Sir, I am an ordained Pentecostal Minister. I preach, evangelize and have duties and responsibilities at my church. We have Worship service on Friday evenings."

15

58.     WETTENSTEIN then responded, "*Well, I still feel that it is unfair and then you will be wanting Sundays off.*"  Plaintiff then responded, "Sir, I'm the SPSU Security Captain, 5x2's with weekends off." Defendant WETTENSTEIN then stated : "*Are you getting a salary from preaching*?" at which time Plaintiff responded, "No," and "what does that have to do with this? Plaintiff responded further stating that "If I was Jewish, I would not even have to be clergy to be accommodated and we would not be having this conversation."   Defendant WETTENSTEIN then responded, "*If you were Jewish, I would give you Fridays and Saturdays off. So I will change your pass days to Fridays and Saturdays.*"

59.     Plaintiff found this entire conversation to be hostile, insulting and offensive.  Plaintiff then responded, "But Sir, I'm not Jewish, I'm Pentecostal and we worship on Friday evenings and Sunday mornings and evenings. So that would not work for me."  Plaintiff then stated, "Sir, you're not being reasonable as per the original approved request. Personnel can schedule me for overtime Monday thru Thursday in return for excusing this writer from overtime on Fridays, if there is any." Finally, the WETTENSTEIN responded, "*I'm not re-approving it and that's final.*" Finally, Plaintiff stated to the Warden that "I am serving you notice that this is religious discrimination," and exited his office.

60.     Defendant WETTENSTEIN and Defendant CLIFFORD are discriminated against and harassed Plaintiff by, among other things,  creating a hostile environment by sharing Plaintiff's personal confidential information with fellow supervisors and officers regarding his religious accommodation as shown in the meeting with Defendant CLIFFORD and a number of Captains.

61.     In April 2013, Plaintiff was granted time due for the week of July 19, 2013, through July 26, 2013, by Deputy Warden (DW) Kenneth Williams who was the DW of CPSU and this

Plaintiff's immediate supervisor. Defendant CLIFFORD intercepted that approved time due and crossed out the approval and denied the time due. A second request was made for only three of those days which would incur no overtime and would be covered by CPSU and Defendant CLIFFORD again intercepted the approval and denied those days as well. There was no good faith non-discriminatory or non-retaliatory reason for this denial and alteration of the approved requests.

62.     Deputy Warden Williams made another attempt to grant Plaintiff the time due and Defendant CLIFFORD denied it and then got the Warden involved and it was denied. Other Captains' had approved time outside of their vacation pick and that was regularly done in the same Command. Defendant WETTENSTEIN and Defendant CLIFFORD took deliberate steps to retaliate, discriminate and harass Plaintiff all of which added to and created a hostile work environment.

63.     On June 19, 2013, at approximately 9:00 a.m., there was an incident involving Plaintiff and Defendant BROWN during an institutional search. An investigation was started on that day. On Thursday, June 20, 2013, Defendant WETTENSTEIN notified Deputy Warden Kenneth Stukes, the then DW of C.P.S.U. that Plaintiff's tour of duty is to be changed from 0600 x 1430 hours to 0700 x 1531 hours, effective immediately. Then at approximately 1330 hours, Deputy Warden Jacqueline Brantley ordered Plaintiff to report to her office where she notified Plaintiff that he was being ordered to report to HMD for a psych evaluation and he had to surrender his firearm. At that time this was an act of extreme hostility. Plaintiff protested and his firearm was not taken because he had a serious verified threat pending against him and his personal safety.

64.     Plaintiff was then ordered to the Warden's office with his Union delegate, Captain Geston Agostini. Plaintiff asked the Warden (Defendant WETTENSTEIN) why I was being sent

17

for a psych evaluation.  Defendant WETTENSTEIN responded, "*This is my call and I could not sleep at night wondering if Captain Moore would come and shoot ADW Brown and I am basing my decision on a Captain's report.*"

65.    Plaintiff tried to explain that Defendant BROWN'S allegation was not rue and the investigation was not completed. Defendant WETTENSTEIN did not take into consideration that Plaintiff stated that Defendant BROWN threatened him and to divert his unprofessional behavior and threat against Plaintiff that Defendant BROWN concocted an allegation of Plaintiff threatening him.  Plaintiff then questioned why was BROWN not being sent for a psych evaluation. The investigation was in the preliminary stages and Defendant BROWN should have been sent to HMD for threatening this writer. Defendant WETTENSTEIN again stated it was his decision.  This was an act to further harm Plaintiff, and subject him to extreme hostility and professional harm.

66.    Plaintiff had information that all persons present on the search and at the incident with Defendant BROWN , were not asked to submit reports. The investigation was still pending and could not have been completed but the Defendant WETTENSTEIN took action against Plaintiff prematurely and said decision and acts were a further form of continued harassment, abuse, discrimination and retaliation.

67.    On June 26, 2013, a number of Officers attempted to submit reports regarding this incident and were informed that the investigation was already concluded, leading led Plaintiff to believe that a decision was made against without a proper and full investigation.

68.    Plaintiff has complained that he feels  that Defendant WETTENSTEIN rushed to judgment to further harass Plaintiff. Defendant WETTENSTEIN humiliated and caused undue hardship by concluding that Plaintiff  was guilty and sending Plaintiff to be evaluated by a psych

18

which was made known to Plaintiff's peers and subordinates. This was clearly another form of harassment and Defendant WETTENSTEIN'S blatant hostility, retaliation and discrimination against Plaintiff.

69.     On Friday, July 12, 2013, on the 7:00 to 3:00 tour, Captain Saud Abdul Malik, was scheduled for overtime on that tour. However, Captain Abdul Malik told Defendant JOHNSON, that she did not want to stay because of Ramadan and Defendant JOHNSON allowed her go home and placed (stuck) Captain Richard Hobson to do her scheduled overtime. By contrast, at the end of Plaintiff's tour on Friday, July 26, 2013, at approximately 1:30 p.m., Plaintiff notified ADW (Assistant Deputy Warden) Morgan, who was the 7:00 to 3:00 tour Commander, that he would like to relinquish his scheduled overtime to Captain Chrystal Jones, who wanted to that scheduled overtime.

70.     Plaintiff  explained to ADW Morgan that he was trying to make Friday evening service at his church, and he permission was given for that schedule change to occur. However, ADW Morgan indicated he would have to re-stick me for two hours for Captain Robert Hayes,  who took ten hours between tours.  Plaintiff was then notified by Captain Jones that she did not realize that she was close to maxing out for the month at which time Plaintiff notified ADW Morgan who then gave her the two-hour placement (stick) for Captain Hayes and Plaintiff retained his scheduled overtime.

71.     At approximately 1:45 p.m., Captain Joan Kahn,  requested to take Plaintiff's overtime at which time Plaintiff called the tour commander's office. ADW Morgan then verified that Captain Kahn was under the overtime cap, having only 36 hours and that Plaintiff was authorized to relinquish his scheduled overtime to Captain Kahn. However, Plaintiff  was informed that

19

Defendant JOHNSON was at the front Gate stating to the newly-assigned ADW's on the 3x11 tour, "*Get a report from him and write him up! Captain Moore knows that he was told to report to the on-coming tour commander before departing the facility. He is very disrespectful and that's why I try to stick him every chance I get.*"

72.     At no time did ADW Morgan inform Plaintiff to report to him upon departing the building. Plaintiff then learned that the DEPARTMENT has in writing that he is to go the bottom of the approval (stick) list.

73.     On Tuesday, July 30, 2013, at approximately 11:30 a.m. Plaintiff was having a conversation with Captain Deborah Little, who volunteered for overtime on the 3x11 tour. Captain Little informed Plaintiff that she saw the schedule and that she was taken off the schedule for overtime. Plaintiff contacted the tour Commander's office to see if he could go home given that he was scheduled for overtime and did not volunteer. Plaintiff was simply told to call back by newly-appointed ADW Groce, who was being trained by Defendant JOHNSON.

74.     When Plaintiff called back, he was told by ADW Groce, "*Moore, you are stuck for overtime for seg 8.*" Plaintiff responded by asking that since Captain Little is being sent home even though she volunteered for overtime and she was going to work Plaintiff's post seg 4 on the 3x11, is it alright if Plaintiff stayed on his post for the 3x11? At first ADW Groce said that it would be alright. However, Plaintiff could hear Defendant JOHNSON in the background telling her, "*No! have him work his assigned post seg 8.*" There was no good faith non-discriminatory reason for denying Plaintiff's request.

75.     On Wednesday, July 31, 2013, at approximately 3:00 p.m. Plaintiff was notified via radio by Defendant JOHNSON to land line the tour commander's office. At which time JOHNSON

stated to this Plaintiff, "*Moore, I'm sticking you*." Plaintiff informed Defendant JOHNSON that he was already scheduled for overtime for the security post on the 3x11 tour. JOHNSON then stated, "*I gave away your overtime*."

76.     Plaintiff responded by stating that he never relinquished my overtime. To which JOHNSON stated, "*I'm telling you that you are being stuck for the intake!*" Plaintiff continued to try to explain to JOHNSON that he was already scheduled for overtime but she continued to speak over Plaintiff.   At which time JOHNSON ended the conversation stating, "*look, you're stuck!*"

77.     In response to this clear sign of animus toward Plaintiff he promptly proceeded to the Deputy Warden of Administration's office.  After speaking to DEFENDANT Deputy Warden CLIFFORD, it was revealed to Plaintiff that the personnel office re-assigned his overtime to a newly-assigned Captain. However, during his  initial conversation with JOHNSON, Plaintiff was never informed that personnel took away his scheduled overtime.

78.     In contrast, Captain Kalik Earl, came in for up-front overtime and his assigned post was for seg 7 C.P.S.U. Recreation Supervisor which is a 5x1 tour. Captain Earl's steady post was the 1x9 C.P.S.U. Intake Supervisor on Monday through Friday. However, Captain Earl asked Defendant JOHNSON if he could work his steady post instead. Not only did JOHNSON let him work his steady post for up-front overtime, but JOHNSON gave him a time due for his 1x9 tour and didn't stick the 4x12 captains for his tour.  On the other hand JOHNSON did not afford me the same treatment and instead stuck me 1500 hours.

79.     On Tuesday July 2, 2013 at approximately 1440 hrs Plaintiff was notified by Deputy Defendant CLIFFORD that per Defendant WETTENSTEIN that Plaintiff was no longer going to be on the C.P.S.U Security post.  Instead, Plaintiff was advised that he would be placed on the 4x2 post

21

that was awarded to him back in July 2012.

80.     Plaintiff responded by asking why was this happening at that point since for over a year he had been working this C.P.S.U Security post. Plaintiff advised that he had been chosen as officer of the month, had a spotless record and had nothing but praises for his work performance from his immediate supervisors Deputy Warden Stukes, ADW Patterson and ADW Beaulieu. Plaintiff also pointed out that he filed for the C.P.S.U Security post that was posted for over a month and a half and that he knew for a fact that their was only one other captain who put in for the post who had less seniority than he.

81.     When Plaintiff questioned this action, Defendants could provide no good faith non-discriminatory or non-retaliatory reasons  why Plaintiff was removed from the post when he should have been awarded the post. Defendant CLIFFORD responded *"Moore this is what the Warden wants It's not personal"*. Plaintiff then responded, "this has personal written all over it!"  Plaintiff then detailed that first CLIFFORD and the Warden denied his approved July vacation. Plaintiff then listed a number if incidents that were wrongful, discriminatory and retaliatory including but not limited to:

-       Defendants sharing his confidential information during a meeting with the other Captains regarding his religious accommodation creating a hostile environment.

-       The Warden disapproved the approved religious accommodation.

-       Then warden singled Plaintiff out and changed his hours from 6x2 to 7x3 even though every security captain for the last eight years has worked 6x2 and no other captains who came in 6x2 and works in a specialized area and is on the 7x3 schedule had their hours changed to 7x3.

-       The warden took it upon himself to send Plaintiff to HMD to see the psych and not Defendant BROWN who lied and made a false allegation against Plaintiff to cover up his threat against Plaintiff.

22

- The warden took away Plaintiff's 5x2 weekends off security post, so he would not be able to worship and fulfill his ministerial duties on Sunday's.

82.     Defendant CLIFFORD responded by stating that *"we had a T19 meeting about posts and they told the warden to do it."* Plaintiff then responded asking "Who's they?" Defendant CLIFFORD responded, *"The chief."* Plaintiff then said, "I don't believe that they would never cut a security post, this is blatant retaliation!"

83.     On Friday August 23, 2013 at approximately 3:15 p.m. Plaintiff was notified by Defendant CLIFFORD that Defendant JOHNSON wrote him up. Plaintiff asked her "for what reason?" CLIFFORD replied "for disrespect and hanging up on her." Plaintiff then responded to Defendant CLIFFORD stating in sum and substance that:

- You know that is not true, I was the one who came to you on July 30, 2013 and on July 31, 2013 regarding Assistant Deputy Warden Renee Johnson unprofessional discriminatory behavior towards me, in regards to scheduled overtime in which on both occasions I personally informed you of what Adw. Johnson was doing to me and you said you would look into it.

- Deputy Warden Kenneth Stukes had to intervene and ordered that I be put back on my post for my scheduled overtime.

- Adw. Johnson filed this false report and charges in response to me filing an E.E.O on her, at the urging of Dep. Clifford who even rescheduled the date and time of my original E.E.O. appointment August 3, 2013 at 1400hrs to August 08, 2013 at 1000hrs without my knowledge or permission.

- In order to notify Adw. Johnson that I was going to file a complaint and to allow her to file the C.D on the same exact date as my rescheduled appointment.

- E.E.O. is supposed to be confidential and respondent's are not supposed to be involved in any way shape or form in regards to scheduling of a complainant's appointments.

- I would like for your office to respond in writing as to whether this is proper procedure as to filing E.E.O. complaints.

23

84.     In response to this reasonable request Defendants provided no response.  Upon information and belief Plaintiff's confidential complaints were being leaked by Defendant PINNOCK as a further form of hostility, retaliation and discrimination.

85.     During his tenure with the CORRECTION DEPARTMENT, On July 23, 2014, Moore and a team were conducting a cell extraction of an inmate who refused to exit the 3-point search area. Moore gave inmate multiple opportunities to comply to order to exit but inmate refused. At which time inmate was warned that the MK9 cell buster would be used if he did not comply. He still refused. Moore administered three, one-second bursts of the MK9 cell buster.

86.     However, the desired effect of slowing down the inmate did not work and the inmate became very violent— kicking and punching at Moore and the team of officers. As the officers attempted to restrain the inmate, he continued to kick and punch and made contact with the seal of the mask being worn by Moore causing it to break. Inmate had also injured another corrections officer which required that Moore take over the shield of the downed officer.

87.     The Inmate was brought to the decontamination area to be showered and cleaned of the chemical. Once inmate was secured in the shower pen, corrections officers took off masks as is normal. The Inmate continued to resist and refused to be decontaminated and refused to exit the shower pen area. Corrections officers had to again extract the inmate. The shower area was a very small area and all the officers as well as the inmate were contaminated by the fumes from the MK9 cell buster.  After getting the inmate out of the shower pen, the team had to get him on a gurney and get the inmate to medical treatment.

88.     Plaintiff was with inmate all this time. His throat was burning so he got a cup of water in the clinic and swallowed and felt the burning intensify. He also experienced chest pains, shortness

24

of breath and burning of throat. After the inmate's examination and securing the inmate in a cell ,

Plaintiff then returned the camera (used throughout) to Deputy Warden's office. After which time

they requested emergency medical services. Moore was sent to Queens Hospital, treated,

decontaminated, put on nebulizer and advised to see his own doctor. It became clear that this level

of exposure caused Plaintiff physical injuries.

89.     As a result of this altercation with the inmate, Plaintiff MOORE sustained injuries

Chemical burns to lungs, throat and forearms from the MK9 cell buster (new chemical agent that the

department started using for cell extractions and any big disturbance.) The effects of the MK9 cell

buster are burning to the eyes, throat, causes runny nose, teary eyes, can burn the skin.  This

chemical, which rendered him injured and/or disabled as per both his and the CITY'S doctors'

opinions. Plaintiff MOORE remained out of work as a result. Plaintiff also suffered from an injury

to his leg.

90.     Plaintiff MOORE applied for ¾ disability as his injuries were severe enough to

prevent him from returning to work for the DEPARTMENT from the date of the incident. Said

application was granted and as of September 10, 2015 Plaintiff officially retirement and no longer

remains employed by the DEPARTMENT.

91.     Plaintiff MOORE suffered from no mental impairments or disabilities as a result

of his injuries, or as a result of the altercation he had with the inmate.

92.     Plaintiff MOORE is/was an officer in good standing at all times relevant.

93.     At the time that Plaintiff MOORE applied for  retirement from his employment,

Plaintiff MOORE also applied for a pistol permit and/or a "good guy letter," from the SHERIFF'S

DEPT., which would allow him to possess and carry a pistol as a retiree.

25

94.     Plaintiff MOORE' application was allegedly lost and not reproduce.  When it was refilled it was ignored and despite his best efforts it has in essence been summarily denied as no action has been taken on it.

95.     In August of 2015, Plaintiff's request for 'Good Guy' letter was verbally made by telephone to Ms. Moses, timekeeper in the Personnel Department of Otis Bantum Correctional Center. Ms. Moses confirmed that letter was sent.  It was well known to the Defendants that Plaintiff had a serious, verified threat that was already in place by a Crypt gang leader and was required through Personnel to requalify for gun in August of 2015 at the range.

96.     However, in October of 2015, Plaintiff contacted headquarters to find out the status of 'Good Guy' letter and was told that they did not have the letter. Plaintiff had made previous contact with headquarters and confirmed with Mr. Juarbe that they had received the Good Guy letter request and that it was with the investigations division.

97.     Plaintiff MOORE's above-stated injuries were not the type of injuries that prevented or hindered Plaintiff MOORE from owning, operating and/or securing a firearm - as per his doctors' opinions.

98.     Plaintiff MOORE was a peace officer with high moral character and does not suffer from any mental disabilities and/or impairments that adversely affect his ability to own operate and/or secure a firearm.

99.     Plaintiff MOORE does not qualify for any restrictions on his ability to own or operate a firearm, which are outlined in New York Penal Law § 400 - the section of the New York State Penal Law that governs the issuance of licenses to carry or possess firearms.

100.     Plaintiff MOORE was not asked to submit medical proof to Defendants, from a

26

doctor, which indicated that Plaintiff MOORE is capable of carrying and maintaining a firearm. If there had been any question raised, Plaintiff could supply such proof within 24 hours.

101.    Upon information and belief, Defendants did not provide contrary evidence - that Plaintiff MOORE was unable to carry or operate a firearm - and Defendants posses no evidence, or justification to support any indication or opinion that Plaintiff MOORE should be disqualified from consideration for a firearm license.

102.    Nevertheless, Defendants CITY,  POLICE, DEPARTMENT and all of the Defendants have failed to provide any response and in effect have summarily denied Plaintiff MOORE' application for a pistol permit and/or Plaintiff's application for a "good guy letter," which Plaintiff MOORE required in order to obtain a firearms license.

103.    The reason that Defendants, failed to respond and have essentially denied Plaintiff MOORE's application is because of Plaintiff MOORE's injuries, disability, and the fact that Plaintiff MOORE opposed acts of discrimination and retaliation by his employer, objected to and complained about being discriminated against and has opposed the denial of his right to exercise his faith and religion, and sought to retire while injured and suffering from physical disabilities.

104.    Defendants do not treat similarly-situated Captains or Corrections Officers who retire without a physical disability as they have treated Plaintiff.  Neither do Defendants deny Good Guy Letters in the same manner as they have for Plaintiff for those who have not opposed discriminatory/retaliatory acts and treatment by CORRECTION.

105.    Defendants had no valid business justification for denying Plaintiff MOORE's application for a pistol permit and had no good-faith basis to disqualify Plaintiff MOORE from consideration for same.

27

106.    Defendant's clear intent is to punish Plaintiff MOORE for his engaging in protected activities, opposing denial of reasonable religious accommodations, opposing discrimination and because of his disability and for retiring as a result of said disability.

107.    Among others, Defendants' intent is to place a chilling effect on persons like Plaintiff, Corrections Officers and Corrections Captains from reporting acts of discrimination, retaliation and suffering injuries which render them disabled and from seeking benefits to which he is rightfully entitled.

## AS AND FOR A FIRST COUNT

### Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e

108.    Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 107, inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

109.    Defendants CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION, through their agents and employees and by the conduct set forth above, discriminated against the Plaintiff in his employment, vis-a-vis unequal terms and conditions and unequal opportunities for salary and advancement, based on Plaintiff's race (African-American), color, gender, religion, and in retaliation for his opposing such discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

110.    Defendants CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION, through their agents and employees and by the conduct set forth above have harassed, intimidated and retaliated against Plaintiff, in violation of Title VII for opposing discriminatory practices, which include but is not limited to, Plaintiff's filing of EEO Complaints, grievances, and EEOC Complaints and his verbal complaints and opposition to his hostile work

28

environment.

111.    As a direct result of said acts, Plaintiff has suffered loss of status, opportunities, loss

of title, restrictions on his ability to worship, attend,  and freely practice and share his religion and

other rights and benefits associated with his status as a clergyman and has suffered and continues to

suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great

financial expense and damage to his reputation.

112.    As a result of Defendants' aforesaid acts, Plaintiff is entitled to the maximum

monetary damages and penalties available by law, with costs, punitive damages and attorneys fees

together in excess of two million dollars ($2,000,000.00).

### AS AND FOR A SECOND COUNT
### TITLE VI, 42 U.S.C.2000(d)

113.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 112

with the same force and effect as though fully set forth herein.

114.    Upon information and belief, defendants CITY OF NEW YORK and NEW YORK

CITY DEPARTMENT OF CORRECTION receive federal financial assistance and funds for

earmarked primarily for employment, and/or received federal funding for its educational programs.

115.    The above described discriminatory practices based on race, color and retaliation by

Defendants CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION,

their agents and employees violates Title VI of the 1964 Civil Rights Act and 42 U.S.C. § 2000(d).

116.    Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF

CORRECTION, through their agents and employees (including but not limited to the individuals

named in this instant action) STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE

PINNOCK,  PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON  and by the conduct

set forth above have discriminated, harassed, intimidated and retaliated against Plaintiff, in violation

of Title VI, for opposing discriminatory practices, which include but is not limited to, Plaintiff's

filing of EEO Complaints, grievances,  and EEOC Complaints and  his verbal complaints and

opposition to his hostile work environment.

117.    As a direct result of said acts, Plaintiff has suffered loss of status,

opportunities, loss of title, restrictions on his ability to worship, attend,  and freely practice and share

his religion and other rights and benefits associated with his status as a clergyman and has suffered

and continues to suffer distress, humiliation, embarrassment, psychological trauma  requiring

counseling, great financial expense and damage to his reputation..

118.    As a result of Defendants' aforesaid acts, Plaintiff is entitled to the maximum

monetary damages and penalties available by law, with costs, punitive damages and attorneys fees

together in excess of two million dollars ($2,000,000.00).

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1981

119.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through

118 inclusive of this complaint, with the same force and effect as though herein fully set forth.

120.    The above referenced conduct was part of a pattern and practice of discrimination,

based on race and color, by Defendants CITY OF NEW YORK, NEW YORK CITY

DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD,

NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON all of which

violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No,

102-406).

121.   Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff and African-American), from 2013 through the present.

122.   Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON through their agents and employees and by the conduct set forth above have harassed, intimidated and retaliated against Plaintiff, in violation of Section 1981, for opposing discriminatory practices, which include but is not limited to, Plaintiff's filing of EEO Complaints, grievances, and EEOC Complaints and his verbal complaints and opposition to his hostile work environment. .

123.   As a direct result of said acts, Plaintiff has suffered loss of status, opportunities, loss of title, restrictions on his ability to worship, attend, and freely practice and share his religion and other rights and benefits associated with his status as a clergyman and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great financial expense and damage to his reputation as alleged in the preceding paragraphs of the within complaint.

124.   As a result of defendants unlawful acts, plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorneys fees and punitive damages, together in excess of two million dollars ($2,000,000.00).

## AS AND FOR THE FOURTH COUNT
## 42 U.S.C. §1983 - FIRST AND FOURTEENTH AMENDMENTS

125.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 124, inclusive of this complaint, with the same force and effect as though herein fully set forth.

126.   As set forth in detail by the above allegations, Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION,  STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON together with their agents, servants and employees, acting collectively and individually, have engaged in actions and abuses, discriminatory and retaliatory conduct against Plaintiff in his employment, due to his race, color, religion, free exercise of his religion, and opposition to discrimination and speech of public concern.

127.   Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON , committed the aforesaid unlawful acts and abuses while acting under color of law, and through the abuse of the authority and power of their individual positions within the defendant CITY OF NEW YORK government.

128.   Defendants' systemic discrimination is an infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution, and their retaliatory conduct, acts of intimidation and further denial of access to provide religious services as a Ordained Elder and otherwise; denial of opportunity to conduct, attend and participate in services as had been denied the full exercise of his religious rights as well as maintaining his earned and approved status which had been allowed  to Plaintiff prior to him filing his complaints,

32

grievances and settling his case about the Defendants' conduct. All of which constituted punishment for expressing protected exercise of his faith, right to worship and express himself in terms of his religious beliefs, practice and speak about his religion in further violating Plaintiff's First Amendment rights.

129.    Plaintiff, an African American male, has been treated differently from similarly situated White employees within the CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTION and has been abused and violated because of his race, color, religion, and opposition to discriminatory practices.

130.    As a direct result of said acts, Plaintiff has suffered loss of status, opportunities, loss of assignment, restrictions on his ability to worship, attend, and freely practice and share his religion and other rights and benefits associated with his status as a clergyman and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great financial expense and damage to his reputation as alleged in the preceding paragraphs of the within complaint.

131.    Defendants' acts have caused the Plaintiff to suffer and has resulted in diminishing his employment, loss of assignment, and the ability to advancement in his employment.

132.    As a result of defendants unlawful acts, plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorneys fees and punitive damages, together in excess of two million dollars ($2,000,000.00).

## AS AND FOR A FIFTH COUNT
## 42 U.S.C. § 1985

133.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 132, inclusive of this complaint, with the same force and effect as though herein fully set forth.

134.    Each of the Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON knew and/or had reason to know that their actions and inactions would deprive Plaintiff of equal protection under the laws, yet the Defendants agreed and conspired with each other to deprive Plaintiff of such rights. Said acts violate 42 U.S.C. §1985.

135.    As a direct result of said acts, Plaintiff has suffered loss of status, opportunities, loss of title, restrictions on his ability to worship, attend,  and freely practice and share his religion and other rights and benefits associated with his status as a clergyman and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great financial expense and damage to his reputation as alleged in the preceding paragraphs of the within complaint.

136.    Accordingly, Plaintiff seeks compensatory and punitive damages, in the sum of not less than two million dollars ($2,000,000.00).

## AS AND FOR A SIXTH COUNT
## 42 U.S.C. § 1986

137.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 136, inclusive of this complaint, with the same force and effect as though herein fully set forth.

34

138.    Each of the Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON knew and/or had reason to know that their actions and inactions would deprive Plaintiff of equal protection under the laws, yet the Defendants agreed and conspired with each other to deprive Plaintiff of such rights. Said acts violated the Plaintiff's rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983, 1985 and 1986.

139.    Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. § 1986 to prevent the discriminatory and retaliatory conduct against Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur.

140.    CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK , PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON's failure to stop these wrongful actions constitutes a breach of their duty to do so under 42 U.S.C. §1986.

141.    CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON knew or should have known that the aforementioned conduct was violative of his Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

35

142.   Said Defendants had and continue to have the power to prevent the continued due process violations against PAUL MOORE yet have failed to prevent them.

143.   As a direct result of said acts, Plaintiff has suffered loss of status, opportunities, loss of assignment, restrictions on his ability to worship, attend, and freely practice and share his religion and other rights and benefits associated with his status as a clergyman and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great financial expense and damage to his reputation as alleged in the preceding paragraphs of the within complaint.

144.   That by reason of the foregoing, plaintiff has been subjected to emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration and was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of two million dollars ($2,000,000.00).

## AS AND FOR A SEVENTH COUNT
### 42 U.S.C. § 12132
### Equal Opportunity for Individuals with Disabilities with regard to Public Services Under the American With Disabilities Act

145.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 144 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

146.   Defendants CITY OF NEW YORK and CORRECTION DEPARTMENT are public entities, agencies and branches of CITY which receive funding and financial assistance (in various forms) through the federal government. Defendant CITY OF NEW YORK owns operates and

controls different departments that provide public services – including the CITY Police Department Pistol Licensing Bureau/Section.

147.   Defendant CITY OF NEW YORK is a public entity that provides services, programs or activities to the members of the general public, as well as to its employees and past employees (such as Plaintiffs herein).

148.   Plaintiff is a qualified individual with disabilities and by reason of his disabilities has been excluded from participation and denied the benefits, services, programs or activities of the CITY OF NEW YORK and State of New York and subjected to discrimination by the Defendants herein.

149.   Pistol permits and gun licensing are public services provided by the CITY for the benefit of its constituents, employees and residents, including Plaintiffs herein.

150.   Plaintiff is rightfully entitled, as a former law enforcement employee as well as a member of the general public, to receive services (i.e. gun license privileges and/or consideration of their gun permit applications) free of encumbrances by the CORRECTION DEPARTMENT, and CITY OF NEW YORK.

151.   Defendant CITY OF NEW YORK, through its CORRECTION DEPARTMENT, discriminated against Plaintiffs based upon their disabilities by interfering with Plaintiff's abilities to obtain pistol permits/licensing.

152.   At all times, Collective Defendants were aware that Plaintiff was entitled to receive a pistol permit because he had no impairments to their abilities to own, handle, operate, and secure pistols/firearms.

153.   COLLECTIVE DEFENDANTS refused to provide Plaintiff with his license and/or permit despite that no accommodation was necessary and the issuance of licence and/or permit to

Plaintiffs requires no extra expense or effort.

154.   COLLECTIVE DEFENDANTS denied/failed to respond to Plaintiff's requests for license and permit pursuant to a discriminatory motive and Defendants refused to rectify and/or prevent said discrimination when made aware of same. Instead, Defendants sought to deprive Plaintiff of his rights to property, benefits, permits, licensing, bodily integrity and personal safety, privileges, immunities, due process and equal protection under the law.

155.   As a direct result of said acts, Plaintiff suffered and continues to suffer diminished privileges, loss of privileges, loss of services, loss of benefits, loss of opportunities and loss of rights commensurate with retirement and have continued to suffer, humiliation, embarrassment, fear for personal safety, fear for the safeties of their families and/or persons within their care.

156.   As a consequence of the Defendants' systemic practice, pattern, and custom of intentionally promoting and supporting the CITY AND/OR THE DEPARTMENT's violations of *42 U.S.C* § 12132, Plaintiff suffered and continues to suffer loss of benefits, loss of privileges, loss/deprivation of constitutional rights, fear for personal safety,  humiliation, expense and embarrassment.

157.   Plaintiff is entitled to a declaratory judgment against Defendants in addition to an Order enjoining Defendants from continuing to engage in the discriminatory acts outlined above. Plaintiffs each suffered and are entitled to, a declaratory judgment correcting the wrongs and violations committed and damages sustained to date and continuing in excess of two million dollars ($2,000,000), as well as punitive damages, costs and attorney 's fees.

## AS AND FOR A EIGHTH COUNT
## REHABILITATION ACT (29 U.S.C § 794)

158.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 157 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

159.     Defendant CITY OF NEW YORK and CORRECTION DEPARTMENT are public entities, agencies and branches of CITY which receive funding and financial assistance (in various forms) through the federal government. Defendant CITY OF NEW YORK owns operates and controls different departments that provide public services - including the CITY Police Department Pistol Licensing Bureau/Section.

160.     Defendant CITY OF NEW YORK is a public entity that provides services, programs or activities to the members of the general public, as well as to its employees and past employees (such as Plaintiff herein).

161.     Plaintiff is a qualified individual with disabilities and by reason of his disabilities has been excluded from participation and denied the benefits, services, programs or activities of the CITY OF NEW YORK and State of New York and subjected to discrimination by Defendants herein.

162.     Pistol permits and gun licensing are public services proved by the CITY for the benefit of its constituents, employees and residents, including Plaintiffs herein.

163.     Plaintiff is a rightfully entitled, as a former law enforcement employee, as well as members of the general public, to receive services (i.e. gun license privileges and/or consideration of their gun permit applications) free of encumbrances by the CORRECTION DEPARTMENT and CITY OF NEW YORK.

164.     Defendant CITY OF NEW YORK, CORRECTION DEPARTMENT and STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON, discriminated against Plaintiff based upon his disabilities by interfering with Plaintiff's abilities to obtain pistol permits/licensing and/or by otherwise knowingly causing Plaintiffs to be excluded from participation in the pistol licensing program of the CITY.

39

165.   At all times, Collective Defendants were aware that Plaintiff was entitled to receive a pistol permits because they each had no impairments to their abilities to own, handle, operate and secure pistols/firearms.

166.   At all times, Defendants were aware that their refusal to provide a "Good Guy Letter" to Plaintiff free of encumbrances would cause Plaintiff to be unable to receive pistol permits altogether.

167.   COLLECTIVE DEFENDANTS refused to provide Plaintiff with his license and/or permit despite that no accommodation was necessary and the issuance of the licenses and/or permits to Plaintiffs required no extra expense or effort.

168.   COLLECTIVE DEFENDANTS denied Plaintiff's requests for license and/or permit pursuant to a discriminatory motive and Defendants refused to rectify and/or prevent said discrimination when made aware of same. Instead, Defendants sought to deprive Plaintiff of his rights to property, benefits, permits, licensing, bodily integrity and personal safety, privileges, immunities, due process and equal protection under the law.

169.   As a direct result of said acts, Plaintiff suffered and continues to suffer diminished privileges, loss of privileges, loss of services, loss of benefits, loss of opportunities, loss of rights commensurate with retirement and have continued to suffer humiliation, embarrassment, fear for personal safety, fear for the safeties of his family and/or persons within his care.

170.   As a consequence of the Defendants' systemic practice, pattern, and custom of intentionally promoting and supporting the CITY, AND/OR DEPARTMENT's violations of 29 U.S.C. § 794, Plaintiff suffered and continues to suffer loss of benefits, loss of privileges, loss/deprivation of constitutional rights, fear for personal safety, humiliation, expense and embarrassment.

171.    Plaintiff is entitled to a declaratory judgment against Defendants in addition to an Order enjoining Defendants from continuing to engage in the discriminatory acts outlined above. Plaintiffs each suffered and are entitled to, a declaratory judgment correcting the wrongs and violations committed and damages sustained to date and continuing in excess of two million dollars ($2,000,000), as well as punitive damages, costs and attorney's fees.

## AS AND FOR A NINTH COUNT
## NYS EXECUTIVE LAW §296 AND N.Y. CITY ADMIN. CODE §§8-101 TO 131
## (PENDENT STATE LAW CLAIM)

172.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 171, inclusive of this complaint, with the same force and effect as though herein fully set forth.

173.    Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON, together with their agents, servants and employees, acting collectively and individually, discriminated against the plaintiff in his employment, via denied opportunities for advancement, assignments, benefits including leave and time off, denial of freedom to worship and practice his religion, inequitable pay,  hostile work environment, and unequal terms and conditions of employment, as set forth in the preceding paragraphs.

174.    The individual Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF,  SHON BROWN and RENEE JOHNSON, together with their agents, servants and employees, acting collectively and individually, through the actions and conduct set forth in the preceding paragraphs, did aid and abet one another in permitting, condoning, and helping to execute the aforesaid pattern and practice, by CITY OF NEW YORK and

41

NEW YORK CITY DEPARTMENT OF CORRECTION, of race, color, religion, and retaliation based discrimination in employment, denied advancement or job opportunities, inequitable pay, a hostile work environment, and unequal terms and conditions of employment as visited upon Plaintiff, PAUL MOORE.

175. All of the aforementioned Defendants lacked any business reason or justification for their aforesaid disparate treatment of Plaintiff, and instead subjected Plaintiff to the above described adverse employment actions, based on plaintiff's race, color, religion, attempt to exercise his religion and in retaliation for Plaintiff's filing of grievances and charges of discrimination, opposing discrimination, and voicing speech of public concern to the media.

176. Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff and African-American workers), from 1994 through the present.

177. Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON through their agents and employees and by the conduct set forth above have harassed, intimidated and retaliated against Plaintiff, in violation of Title VII for opposing discriminatory practices, which include but is not limited to, Plaintiff's filing of EEO Complaints, grievances, and EEOC Complaints and his verbal complaints and opposition to his hostile work environment.

178. As a direct result of said acts, plaintiff PAUL MOORE has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and

physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

179.    As a result of defendants unlawful acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, including all compensatory damages available under NYS Executive Law Section 296 and N.Y. City Admin. Code §§8-101 to 13.

180.    The above discriminatory pattern and practice of based on race, color, religion, and retaliation by Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION, STEPHEN WETTENSTEIN, MICHELE CLIFFORD, NADINE PINNOCK, PATRICIA LeGOFF, SHON BROWN and RENEE JOHNSON , together with their agents, servants and employees, acting collectively and individually violates New York State Human Rights Law

181.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within his employment, loss of opportunities, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

182.    Because of Plaintiff's race, color, gender, religion, disability and opposition to discriminatory actions, as well as retaliation, he has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals, non-Pentecostal, able bodied persons in that Plaintiff has been treated as stated herein because of his race, color, gender, religion, disability and opposition to discrimination as well as retaliation.

183.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of status, opportunities, loss of assignment, restrictions on his ability to worship, attend,  and freely practice and share his religion and other rights and benefits associated with his status as a clergyman

43

and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring counseling, great financial expense and damage to his reputation as alleged in the preceding paragraphs of the within complaint.

       184.     That by reason of the foregoing, plaintiff has been subjected to emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration and was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his state, federal and constitutional rights and has been damaged in the sum of two million dollars ($2,000,000.00).

## PRAYER FOR RELIEF

Plaintiff requests judgment as follows:

    a.      First Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

    b.      Second Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

    c.      Third Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

    d.      Fourth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

    e.      Fifth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

    f.      Sixth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars

                     ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

g.      Seventh Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

h.      Eighth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

I.       Ninth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of two million dollars ($2,000,000), pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

l.       A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

m.     Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

n.      An order granting such other legal and equitable relief as the court deems just and proper.

Dated: Hempstead, New York
       March 2, 2016

                               LAW OFFICES OF
                               FREDERICK K. BREWINGTON

                               By:_____
                                  FREDERICK K. BREWINGTON (FB5295)
                                *Attorneys for Plaintiff*
                                556 Peninsula Boulevard
                                Hempstead, New York  11550
                                Tel: (516) 489-6959