UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1/3/17
```

----------------------------------------------------------X

PAUL MOORE,

        Plaintiff,

   -v-

THE CITY OF NEW YORK *et al.*

        Defendants.

----------------------------------------------------------X

15-CV-6600 (GBD) (JLC)

## **REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

I.      BACKGROUND ................................................................2

        A.      Facts Alleged in the Third Amended Complaint ........................... 2

                1.      Denial of Vacation Time ................................................ 4

                2.      Denial of Moore's Transfer Application ............................... 4

                3.      The June 2013 Incident and Related Discrimination and
                        Retaliation Claims ..................................................... 6

                4.      Cancellation of a Previously Approved Religious
                        Accommodation ......................................................... 8

                5.      Rescheduling of Work Assignments and Overtime............ 9

                6.      Moore's Disability, Retirement, and the Non-Issuance of a
                        Good Guy Letter ...................................................... 13

        B.      Procedural History ......................................................... 15

II.     DISCUSSION ................................................................. 21

        A.      Legal Standards ............................................................ 21

                1.      Standard Under Rule 12(b)(6)..................................... 21

                2.      Standard Under Rule 15(a)........................................ 23

        B.      Analysis...................................................................... 25

                1.      Moore's Race, Color, and Gender Discrimination Claims
                        Under Title VII Should Be Dismissed (Count 1).............. 25

                2.      Moore's Race and Color Discrimination Claims Under
                        Title VI Should Be Dismissed (Count 2) ....................... 32

                3.      Moore's Claims of Race, Color, and Gender
                        Discrimination in Violation of 42 U.S.C. § 1981 and 42
                        U.S.C. § 1983 Should Be Dismissed (Counts 3 & 4) ........... 36

i

4.   Moore's Claims of Disability Discrimination Pursuant to the ADA and the Rehabilitation Act Should Be Dismissed (Counts 7 & 8) ............................................................ 42

    a.   Moore Fails to State a Claim Under Title II of the ADA .......................................................... 42

    b.   Moore Fails to State a Claim Under the Rehabilitation Act ......................................................... 48

5.   Moore's Claims of Race, Color, Gender, and Disability Discrimination Pursuant to NYSHRL and NYCHRL Should Be Dismissed (Count 9) ............................................ 49

    a.   Moore Fails to State a Claim Under the NYSHRL ...... 50

    b.   Moore Fails to State a Claim Under the NYCHRL ...... 51

6.   Moore's Hostile Work Environment Claims Should be Dismissed to the Extent They Arise from Allegations of Race, Color, Gender, or Disability Discrimination .......... 53

7.   All of Moore's Remaining Claims Against Individual Defendants Pinnock, LeGoff, and Brown Should Be Dismissed ............................................................................ 55

    a.   Moore's Claims Against Defendant Pinnock ................ 55

    b.   Moore's Claims Against Defendant LeGoff .................. 58

    c.   Moore's Claims Against Defendant Brown ................... 59

8.   Given the Liberal Pleading Standards of Rule 15(a), Moore Should Be Granted Leave to File a Fourth and Final Amended Complaint ...................................................... 61

III.   CONCLUSION ................................................................................. 64

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable George B. Daniels, United States District Judge:**

Plaintiff Paul Moore brings this action pursuant to Title VII of the Civil

Rights Act of 1964 ("Title VII"); Title VI of the Civil Rights Act of 1964 ("Title VI");

42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C. § 1983 ("Section 1983"); 42 U.S.C. §

1985; 42 U.S.C. § 1986; the Americans with Disabilities Act of 1990 ("ADA"); 29

U.S.C. § 794 ("Rehabilitation Act"); N.Y. Exec. Law § 296 ("New York State Human

Rights Law" or "NYSHRL"); and N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYC Human

Rights Law" or "NYCHRL").

In his Third Amended Complaint, Moore alleges that Defendants the City of

New York, New York City Department of Correction, and City employees Stephen

Wettenstein, Michele Clifford, Nadine Pinnock, Patricia LeGoff, Shon Brown, and

Renee Johnson, in both their individual and official capacities, discriminated

against him on the basis of his religion, race, color, gender, and disabilities,

subjected him to a hostile work environment, and retaliated against him in

violation of federal, state, and city laws.  Defendants have moved to partially

dismiss the Third Amended Complaint under Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  They argue that Moore has failed to state a claim upon which

relief can be granted with respect to a number of his allegations, and various other

claims are either barred as a matter of law or brought against improper parties.

For the reasons set forth below, I recommend that Defendants' motion be

granted, but that Moore be given leave to file a fourth and final amended complaint.

1

## I.   BACKGROUND

### A.   Facts Alleged in the Third Amended Complaint

The following facts are taken from Moore's Third Amended Complaint and are assumed to be true for purposes of the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

From 1999 to 2015, Moore was employed by the City of New York ("City") and, in particular, the Department of Correction ("DOC"). Third Amended Complaint ("TAC"), ¶ 11, Mar. 3, 2016, Dkt. No. 39.  Moore alleges that the City and the DOC engaged in unlawful employment discrimination from March 2013 until he retired in 2015, at which time he held the rank of captain, and continuing through Moore's filing of this lawsuit. TAC ¶¶ 9, 12. Moore is an African American male, United States citizen, and resident of New York State. TAC ¶ 11. He is a Pentecostal Christian who held various ministerial duties at his church while he was employed by the DOC.  TAC ¶¶ 11, 34.

In addition to the City and the DOC, Moore named the following DOC employees as Individual Defendants, claiming that they engaged or were otherwise involved in the alleged discriminatory conduct: Wettenstein, a white male who served as warden during the events related in the TAC until his retirement in January 2014; Clifford, a female deputy warden; Pinnock, a female deputy general counsel; LeGoff, a white female who served as an Equal Employment Opportunity ("EEO") officer at DOC; Brown, a male assistant deputy warden ("ADW"); and

2

Johnson, a female ADW.  TAC ¶¶ 16-31.[1]

Prior to March 2013, Moore had filed "several internal EEO charges," alleging unlawful discrimination by the City, the DOC, and various DOC employees, as well as a prior EEOC charge of discrimination.  TAC ¶ 44.  On March 22, 2013, Moore reached an agreement in which he settled all of his claims against the defendants.  TAC ¶ 45.  Moore contends that, nevertheless, following the March 2013 settlement, he was once again the target of discrimination and retaliation by Defendants.  *Id.*  Specifically, Moore alleges that he was "harassed, unfairly targeted in an investigation, had disciplinary charges filed against him (but not informed of same in a timely manner), twice denied a reasonable request for a favorable transfer, denied religious accommodations and then denied the ability to posses [sic] [his] firearm upon retirement due to [his] disabled status."  TAC ¶ 46. He claims that these actions were taken with a discriminatory intent based on his race, color, gender, religion, disabilities, and in retaliation for his having filed the prior EEOC charges to oppose Defendants' discriminatory practices.  TAC ¶ 9. Moore also claims that Defendants subjected him to a hostile work environment through this discriminatory treatment.  *See, e.g.*, TAC ¶¶ 2, 3, 62, 110, 116, 122, 173, 174, 177.  The Court summarizes the specific incidents that are the subject of these allegations below.

---

[1] The Court has identified the gender and race of Individual Defendants to the extent that Moore refers to and identifies these characteristics when naming the Defendants in the TAC.  TAC ¶¶ 16-31.

3

### 1.   Denial of Vacation Time

In April 2013, Moore's immediate supervisor, Deputy Warden Kenneth Williams, granted him vacation time for the week of July 19 to July 26 but Defendant Deputy Warden Clifford subsequently denied the approved time off. TAC ¶ 61. Moore later made a second request for vacation time for three days of the same week, noting that this time off would be covered by a co-worker. This request was again initially approved by Williams but then denied by Clifford. *Id.* Williams made a third attempt to grant Moore this vacation time but Clifford again denied the leave and involved Defendant Warden Wettenstein, who confirmed the denial. TAC ¶ 62.

Moore claims that Defendants Clifford and Wettenstein had "no good faith non-discriminatory or non-retaliatory reason" to deny these leave requests. TAC ¶ 61. He asserts that other captains in the same command had been "regularly" granted similar requests for vacation time. TAC ¶ 62. Accordingly, he alleges that Defendants Wettenstein and Clifford denied his requests in a "deliberate" attempt to "retaliate, discriminate and harass Plaintiff[,] all of which added to and created a hostile work environment." *Id.*

### 2.   Denial of Moore's Transfer Application

In January 2013, Moore applied for a transfer to the Adjudications Department for a position as a captain with the Law Department of the DOC. TAC ¶ 47. He claims that he was denied this transfer despite being the most qualified candidate for the position. *Id.* Moore also notes that he was interviewed for this

4

position by Defendant Pinnock who "did not generally interview candidates." TAC ¶ 48. Moore asserts that Pinnock's involvement was intended to "intimidate" him in retaliation for his prior EEOC charges because Pinnock was simultaneously "dealing with" these charges and their settlement in her capacity as deputy general counsel. *Id.*

Moore again applied for transfer to the Adjudications Department in July 2013, and was rejected in October 2013 despite being "the most qualified candidate" for the position. TAC ¶ 49. Moore contends that, as a pretext for denying him the position, the DOC brought disciplinary charges against him, which it then cited as the reason for the rejection. *Id.* Moore asserts that he was denied the position due to discrimination and in retaliation for his prior EEOC activity. TAC ¶¶ 49-51.

Moore contends that the DOC's reliance on these disciplinary charges was "clearly pretextual" because the charges were only brought to his attention upon his October 2013 denial of transfer, even though they allegedly related to incidents that occurred in November 2012 and June 2013. TAC ¶ 50. With respect to the November 2012 incident, Moore asserts that, in April 2013, the DOC "increased their investigation" of a "use of force" claim made against him that related to an incident in November 2012, despite the fact that this inquiry "should have been concluded well before the April 2013 time." TAC ¶ 51. Moore also argues that the June 2013 incident, which is discussed in detail in the following section, involved false accusations that were "concocted" by Defendant Brown. TAC ¶ 65. Moore asserts that Defendant Wettenstein gave Brown's claims more weight than

5

competing claims Moore made against Brown, which were "ignored and not acted upon." TAC ¶ 53. Moore was only made aware of these charges after his transfer denial, a process that he asserts amounted to "abuse and scrutiny which he had not been subjected to in this fashion prior to opposing acts of discrimination and retaliation and filing his complaints." TAC ¶ 54. Moore contends that these disciplinary charges were "trumped-up" in order to block his candidacy for the Law Department position. TAC ¶ 49.

### 3. The June 2013 Incident and Related Discrimination and Retaliation Claims

Moore maintains he was falsely accused of threatening Defendant Brown after "an incident" took place between them during an institutional search on June 19, 2013. TAC ¶¶ 50, 63. Moore asserts that Brown "concocted an allegation [that] Plaintiff threaten[ed] him" in an effort to "divert" attention from Brown's own "unprofessional behavior and threat[s Brown made] against Plaintiff." TAC ¶ 65.

Although Moore attempted to explain these circumstances to Warden Wettenstein, his "complaints were ignored and not acted upon" by Wettenstein or other Defendants. TAC ¶¶ 53, 65. Instead, the day after the incident with Defendant Brown, Warden Wettenstein changed Moore's tour of duty by moving his assigned shift an hour later, directed him to undergo a mental evaluation, and ordered him to surrender his firearm. TAC ¶ 63.[2]

Moore alleges that the change in his shift assignment constitutes evidence

---

[2] Moore ultimately did not surrender his firearm after he asserted that there was "a serious verified threat pending against him and his personal safety." TAC ¶ 63.

6

that Wettenstein "singled [him] out" because no other captains in his unit with
similar levels of experience on his previous shift had their hours altered.  TAC ¶ 81.
Moore also claims that he was treated differently than Brown and that Defendants
acted prematurely in taking action before completing the investigation into this
incident.  TAC ¶¶ 65-66.  Moore states that, although he and Brown had made
conflicting complaints of threatening behavior, Moore was subjected to a mental
evaluation and an investigation of the incident, which led to the disciplinary
charges discussed above, but Brown received no comparable discipline.  TAC ¶¶ 53,
65.  When Moore asked about this unequal treatment, Wettenstein replied that his
decision was based on a "Captain's report."  TAC ¶¶ 64-65.  However, Moore alleges
that none of the officers present was asked to submit reports about the incident
and, when a number of officers did attempt to submit their reports on June 26,
2013, they were told the investigation had already concluded.  TAC ¶¶ 66-67.
Moore thus "believe[d] that a decision was made against [him] without a proper and
full investigation."  TAC ¶ 67.  This rush to judgment allegedly caused Moore
humiliation and undue hardship, which was compounded by his peers' and
subordinates' knowledge that he was ordered to receive a psychological evaluation.
TAC ¶ 68.  Accordingly, Moore argues that the Warden's response to this incident
constituted "continued harassment, abuse, discrimination, and retaliation" and was
intended to "subject him to extreme hostility and professional harm."  TAC ¶¶ 65-
66.

7

### 4.    Cancellation of a Previously Approved Religious Accommodation

Defendants were aware that Moore had duties as an "ordained Minister of the Gospel and a Presiding Elder" at his Pentecostal Church. TAC ¶¶ 34, 52. Over the course of his employment at the DOC, Moore was granted an ongoing religious accommodation that excused him from overtime on Fridays in order to allow him to volunteer as a minister for his congregation and attend services on Friday nights and Saturdays. TAC ¶ 52. However, in June of 2013, Defendant Wettenstein cancelled this accommodation. *Id.* Wettenstein, along with "other Defendants," knew that denying this accommodation would adversely impact Moore's ability to fulfill his ministerial responsibilities. TAC ¶¶ 52, 57. Moore alleges that Defendants had "no good faith non-discriminatory or non-retaliatory reason" for eliminating the previously approved religious accommodation, and he claims "it was cancelled to harm, harass and discriminate . . . as a further act of retaliation." TAC ¶ 52.

On June 14, 2013, Moore was informed of Wettenstein's decision to rescind his religious accommodation and he met with Wettenstein to discuss this issue. TAC ¶¶ 56-57. At this meeting, Wettenstein told Moore that he had learned that a number of DOC Captains had complained to Deputy Warden Clifford that Moore's overtime exemption on Fridays was unfair, and that Wettenstein himself agreed that it was not "fair to the other Captains." TAC ¶ 57. Moore felt that Defendants Wettenstein and Clifford created a hostile work environment by sharing and discussing "personal confidential information" about Moore's religious

8

accommodation "with fellow supervisors and officers." TAC ¶ 60.

Moore explained to Wettenstein that his religious accommodation was necessary because he "preach[ed], evangeliz[ed], and [had] duties and responsibilities at [his] church" and he noted that if he "was Jewish, [he] would not even have to be clergy to be accommodated." TAC ¶¶ 57-58. Wettenstein replied, stating: "If you were Jewish, I would give you Fridays and Saturdays off. So I will change your pass days to Fridays and Saturdays." TAC ¶ 58 (emphasis omitted). Wettenstein also suggested that if Moore were granted his original accommodation, he would "then . . . be wanting Sundays off," and inquired whether Moore was "getting a salary from preaching," which he was not. *Id.* (emphasis omitted). Moore asserts that he attempted to further explain the need for his originally requested accommodation—namely that moving his days off to Friday and Saturday would still not permit him to fulfill ministerial duties that took place on Sunday—and offered alternative scheduling arrangements that would allow him to make up the excused overtime on other weekdays. TAC ¶¶ 57-59. Nevertheless, Wettenstein refused to reapprove Moore's accommodation. TAC ¶¶ 58-59. Moore found the "entire conversation to be hostile, insulting and offensive" and concluded the discussion by informing Wettenstein that he believed this was "religious discrimination." TAC ¶ 59.

### 5.    Rescheduling of Work Assignments and Overtime

Moore claims that on July 2, 2013, Deputy Warden Clifford informed him that Warden Wettenstein had ordered that he be removed from the security post

9

that he had held for more than a year, and placed on his previous post. TAC ¶ 79.
Moore asked Clifford for an explanation of this unfavorable decision, noting that "he
had been chosen as officer of the month, had a spotless record and had nothing but
praises for his work performance from his immediate supervisors." TAC ¶ 80.
Moore also informed Clifford that he already had "filed" for his current position,
which had been posted for more than a month and a half, and that Moore knew of
only one other captain who had applied but that this captain had less seniority. *Id.*

Moore asserts that Clifford did not provide any good faith non-discriminatory
or non-retaliatory reasons why he was removed from the post. TAC ¶ 81. Instead,
Clifford responded by telling him "this is what the Warden wants[.] It's not
personal." *Id.* (emphasis omitted). Moore proceeded to list several "wrongful,
discriminatory, and retaliatory" incidents he felt indicated that this decision was, in
fact, "personal." *Id.* Clifford responded that "[t]he chief" had told Warden
Wettenstein to change this post. TAC ¶ 82. Moore replied that he did not believe
this claim and that he instead viewed his removal as "blatant retaliation." *Id.*

Moore additionally contends that in July 2013, Defendant ADW Johnson
"began to repeatedly alter, modify and change" Moore's work schedule "without
request by Plaintiff and without his input." TAC ¶ 55. Moore further asserts that,
in response to his complaints about the allegedly "unwarranted and unprecedented"
schedule alterations, he was subjected to disciplinary charges, which he considered
"mistreatment, retaliation and abuse of authority." *Id.*

On July 26, Moore requested permission from ADW Morgan, the acting tour

10

commander, to relinquish his overtime scheduled for that day to another captain. TAC ¶ 69. Moore explained that he was making this request in order to attend Friday evening services at his church and ADW Morgan gave him authorization to relinquish the overtime hours. TAC ¶¶ 69-71. At no time did ADW Morgan instruct Moore to report to him before leaving work. TAC ¶ 72. Nevertheless, Moore learned that ADW Johnson subsequently instructed the ADWs that were assigned to the following shift to "[g]et a report from [Moore] and write him up!" TAC ¶ 71 (emphasis omitted). ADW Johnson further stated that "Captain Moore knows that he was told to report to the on-coming tour commander before departing the facility. He is very disrespectful and that's why I try to stick him [with overtime] every chance I get." *Id.* Moore learned later that DOC "has in writing that he is to go [to] the bottom of the approval (stick) list" for overtime assignments. TAC ¶ 72.

Moore alleges that a few weeks prior, on July 12, 2013, another captain, Saud Abdul Malik, had made a similar request to ADW Johnson for an overtime reassignment so that she could leave early to observe Ramadan. TAC ¶ 69. Moore claims that ADW Johnson approved her request, assigned another captain to take Captain Malik's scheduled overtime, and allowed her to leave without issue. *Id.*

On July 30, 2013, Captain Deborah Little volunteered to take the overtime for which Moore was scheduled on that day because Little had been removed from the schedule and Moore had not volunteered for the overtime. TAC ¶ 73. Moore contacted ADW Groce by phone to make this request. *Id.* ADW Groce was being

11

trained by ADW Johnson at the time. TAC ¶¶ 73-74. Although Groce initially approved the request, Moore alleges that he heard ADW Johnson tell Groce to deny his request and Moore was ultimately not relieved of the overtime. TAC ¶ 74. Moore asserts that there was "no good faith non-discriminatory reason for denying [this] request." *Id.*

The following day, on July 31, 2013, ADW Johnson informed Moore that she was "sticking" him and that she had given away his overtime. TAC ¶ 75. Moore alleges that, when he attempted to tell ADW Johnson that he had been scheduled for an overtime post that day and had not relinquished it, she "continued to speak over Plaintiff" and did not offer any explanation. TAC ¶ 76. In response, Moore went directly to Deputy Warden Clifford's office to inquire about the situation. TAC ¶ 77. Only then was it revealed to him that the personnel office had reassigned his scheduled overtime to a newly-assigned captain. *Id.* Moore asserts that, in contrast to these incidents, ADW Johnson treated his colleague, Captain Kalik Earl, significantly more favorably, accommodating Earl's overtime and scheduling requests. TAC ¶ 78.

On August 23, 2013, Moore was notified by Deputy Warden Clifford that ADW Johnson had written him up for "disrespect and hanging up on her." TAC ¶ 83. Moore responded that Clifford should know that the write-up was a false report because Moore had approached Clifford regarding ADW Johnson's unprofessional and discriminatory behavior directly after the July 30 and 31 incidents concerning his overtime assignments, and Deputy Warden Kenneth Stukes had to intervene to

12

order that Moore be reassigned his scheduled overtime. *Id.* Moore further informed Clifford that ADW Johnson had filed these false charges in response to the EEO charge he had filed against her. *Id.* He also accused Clifford of rescheduling his original appointment regarding his EEO complaint without his knowledge and permission in order to notify ADW Johnson and allow her to file charges against Moore on the date of his appointment. *Id.* Moore asserted that it was his understanding that EEO complaints are meant to be confidential and respondents are not supposed to have any involvement in scheduling complainant's appointments. *Id.* Moore then requested a written response from Clifford regarding whether this was appropriate procedure as to the filing of EEO complaints. *Id.* Defendants provided no response to this request. TAC ¶ 84. Moore additionally claims "[u]pon information and belief" that Defendant Pinnock had leaked his confidential EEO complaints "as a further form of hostility, retaliation and discrimination." *Id.*

### 6. Moore's Disability, Retirement, and the Non-Issuance of a Good Guy Letter

On July 23, 2014, Moore and a team of officers conducted a cell extraction of a resisting inmate, in which Moore administered a MK9 cell buster, a chemical agent used by the DOC for cell extractions and other large disturbances. TAC ¶¶ 85, 89. During this process, the inmate made contact with and broke the seal of Moore's mask. TAC ¶ 86. By the time the inmate was subdued and secured, Moore had sustained extended exposure to MK9, resulting in chemical burns to his lungs, throat, and forearms. TAC ¶¶ 85-89. Moore also sustained an injury to his leg as a

13

result of the altercation. TAC ¶ 89.

Following emergency treatment, Moore's personal doctor and a doctor designated by the City both offered medical opinions that this incident had "rendered [Moore] injured and/or disabled." TAC ¶¶ 88-89. Moore applied for "3/4 disability," stating that his injuries prevented him from returning to work from the day he sustained them. TAC ¶ 90. His application was subsequently granted. *Id.* Moore officially retired on September 10, 2015 and is no longer employed by the DOC. *Id.*

While Moore was still employed by the DOC, and by virtue of his status as a correction officer, Moore had been permitted to legally possess his duty firearms and personal firearms as well as purchase new firearms that were not intended for work and prohibited from circulation to the general public. TAC ¶¶ 35-37. At or around the time of his retirement, Moore applied to the New York City Sheriff's Department for a "pistol permit and/or a '[G]ood [G]uy [L]etter,'" which would permit him to continue to legally possess and carry a firearm as a retired officer. TAC ¶ 93.

Moore asserts that, according to his doctors' opinions, his injuries were not of the type that would prevent him from capably owning, operating, or securing a firearm. TAC ¶ 97. He further claims that he was "an officer in good standing at all times relevant" with "high moral character" who "does not suffer from any mental disabilities and/or impairments that adversely affect his ability" to possess a firearm. TAC ¶¶ 92, 98. Moore maintains that he is not barred, under any relevant

14

statutory restrictions, from owning or operating a gun and further claims that

Defendants are aware of a "serious, verified threat" against him by a gang leader.

TAC ¶¶ 95, 99.

Moore verbally requested a Good Guy Letter in August 2015 and received

confirmation from a timekeeper in the Personnel Department that his letter had

been sent. TAC ¶ 95. Personnel in "headquarters" subsequently confirmed that

they had received the request and that it was "with the investigations division."

TAC ¶ 96. Nevertheless, when Moore contacted headquarters in October 2015,

personnel informed him that they did not have the letter. *Id.* Moore states that,

even after he refiled this allegedly lost request, it continued to be "ignored." TAC ¶

94. Moore asserts that, because Defendants have failed to respond to his continued

inquiries regarding the status of his Good Guy Letter, have taken no action with

respect to his request, and have not provided any evidence that he is ineligible, his

request has been "essentially denied." TAC ¶¶ 94, 101-03.

Moore alleges that Defendants do not treat similarly situated retired captains

in this way and believes that there is no "valid business justification" or "good-faith

basis" for denying his request. TAC ¶¶ 104-05. He concludes that Defendants'

"intent is to punish [him] for his engaging in protected activities, opposing denial of

reasonable religious accommodations, opposing discrimination and because of

disability and for retiring as a result of said disability." TAC ¶¶ 106-07.

### B.   Procedural History

In February 2014, Moore filed a charge with the EEOC alleging that the City

and the DOC had discriminated against him on the basis of race, sex, and religion

and had retaliated against him due to his previous opposition to discriminatory

practices. TAC ¶¶ 8-9; Plaintiff's Response in Opposition to Defendants' Motion to

Dismiss, June 1, 2016, Dkt. No. 45 ("Pl.'s Response").[3]  On June 3, 2015, Moore was

issued a "Notice of Right to Sue" pertaining to that charge. TAC ¶ 8.[4]  On August

20, 2015, Moore filed his initial complaint in this case as a *pro se* plaintiff, claiming

that the DOC and the Individual Defendants violated Title VII by engaging in

employment discrimination on the basis of his race, color, gender, religion, and

retaliated against him due to his prior complaints to the EEOC. *See* Complaint, at

1-3, Aug. 20, 2015, Dkt. No. 1.

This case was referred to me by Judge Daniels on October 16, 2015 for

general pretrial supervision and a report and recommendation regarding any

dispositive motions. Order of Reference, Oct. 16, 2015, Dkt. No. 11. On November

---

[3] Although Moore alleges in the TAC that his 2014 EEOC filing included charges of
unlawful retaliation against him due to his disability, TAC ¶ 9, Moore did not in
fact bring any claims related to disability discrimination in his EEOC Charge. *See,*
*e.g.*, Complaint, at 7-8, Aug. 20, 2015, Dkt. No. 1 ("Complaint") (pincite refers to
page numbers generated by the Court's ECF system, not the pagination of the
original document); First Amended Complaint, at 12-13, Nov. 20, 2015, Dkt. No. 23
(pincite refers to ECF pagination); Second Amended Complaint, at 7-8, Dec. 18,
2015, Dkt. No. 27 (pincite refers to ECF pagination); Declaration of Courtney P.
Fain in Support of Defendants' Motion to Dismiss Ex. A, Apr. 15, 2016, Dkt. No. 42
("Fain Decl.").

[4] Moore states in the TAC that he has annexed a copy of the "Notice of Right to
Sue" to that filing, but this does not appear to be the case. TAC ¶ 8. However,
Moore did attach that notice and a copy of his 2014 EEOC Charge to all three of his
prior *pro se* complaints. Complaint, at 6-8; First Amended Complaint, at 11-13;
Second Amended Complaint, at 6-8. Defendants also attach copies of these
documents as exhibits to the Fain Declaration. Fain Decl. Exs. A, C.

16

12, 2015, Defendants filed a motion to dismiss Moore's initial complaint on the grounds that the DOC is not a suable entity and Title VII claims do not permit individual liability. *See* Defendants' First Motion to Dismiss, Nov. 12, 2015, Dkt. No. 19. On November 20, 2015, the Court granted Moore leave to amend his complaint, directing him to name the City of New York as the proper Defendant for his allegations against the DOC and to pursue claims against Individual Defendants only under statutes that permit individual liability. *See* Order, Nov. 20, 2015, Dkt. No. 21 ("November 20 Order").

However, Moore filed his First Amended Complaint on the same day as the November 20 Order, setting forth essentially identical allegations against the same Defendants but adding a claim under NYCHRL, which permits individual liability. *See* First Amended Complaint, at 1-5. Moore presumably did not see the November 20 Order regarding the Complaint's defects prior to submitting this filing. Accordingly, on November 25, 2015, the Court issued another Order directing Moore to "further amend his complaint to name the City of New York as a defendant, rather than the DOC." Order, Nov. 25, 2015, Dkt. No. 24 ("November 25 Order"). On December 18, 2015, Moore filed a Second Amended Complaint that set forth identical allegations and properly named the City of New York but also continued to include the DOC as a defendant. *See* Second Amended Complaint, at 1-5.

Moore subsequently retained counsel who entered notices of appearance on January 5, 2016. Dkt. Nos. 30, 31. Moore's attorneys requested and were granted leave on January 12, 2016 to file another amended complaint on his behalf. First

17

Letter Motion for Extension, Jan. 12, 2016, Dkt. No. 32; Order, Jan. 12, 2016, Dkt.
No. 33.  Moore, now represented by counsel, filed the TAC on March 3, 2016.

In his TAC, Moore asserts nine causes of action against Defendants and
seeks compensatory and punitive damages in excess of two million dollars along
with costs, attorney's fees, and declaratory relief.  Specifically, Moore contends that:
(1) Defendants discriminated against him in his employment on the basis of his
race, color, gender, and religion in violation of Title VII, 42 U.S.C. § 2000e, by
imposing unequal terms and conditions of employment upon him, subjecting him to
unequal opportunities for salary and advancement, and "harass[ing], intimidat[ing],
and retaliat[ing]" against him in response to his formal and informal opposition to
this discriminatory and hostile work environment, TAC ¶¶ 108-12; (2) Defendants
violated Title VI, 42 U.S.C. § 2000d, by discriminating and retaliating against him
while simultaneously receiving federal funds "earmarked primarily for employment
and/or . . . educational programs," TAC ¶¶ 113-18; (3) Defendants violated 42 U.S.C.
§ 1981 by engaging in a "systemic pattern and practice of discrimination" based on
race and color, of which the above-referenced discrimination and retaliation was a
part and occurred on a "continuous, ongoing basis," TAC ¶¶ 119-24; (4) Defendants
violated 42 U.S.C. § 1983 by engaging in the above-referenced discrimination and
retaliation while acting under the color of law, which infringed on Moore's rights
and protections under the First and Fourteenth Amendments to the United States
Constitution, TAC ¶¶ 125-32; (5) Defendants violated 42 U.S.C. § 1985 by
"agree[ing] and conspir[ing]" to deprive Moore of equal protection of the laws

through the above-referenced discrimination and retaliation, TAC ¶¶ 133-36; (6) Defendants violated 42 U.S.C. § 1986 by failing to prevent or intervene in the conspiracy to engage in the discrimination and retaliation described above, despite their knowledge or reason to know these practices were taking place and their ability to intervene or stop said conduct from occurring, TAC ¶¶ 137-44; (7) Defendants discriminated against Moore on the basis of his disabilities in violation of the ADA, 42 U.S.C. § 12132, by interfering with Moore's ability to obtain pistol permits and/or licensing services to which he is entitled as a member of the general public and a former law enforcement employee, TAC ¶¶ 145-57; (8) Defendants discriminated against Moore on the basis of his disabilities in violation of the Rehabilitation Act, 29 U.S.C. § 794, by knowingly and continually failing to issue the "Good Guy Letter" to which he is rightfully entitled as a former law enforcement employee, TAC ¶¶ 158-71; and (9) Defendants violated NYSHRL, N.Y. Exec. Law § 296, and NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.*, by engaging in the discrimination and retaliation previously alleged, TAC ¶¶ 172-84.

On April 15, 2016, Defendants moved to dismiss Moore's TAC in part, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' Motion to Dismiss ("Motion to Dismiss"), Apr. 15, 2016, Dkt. No. 40; Memorandum of Law in Support of Defendants' Motion to Dismiss, Apr. 15, 2016, Dkt. No. 41 ("Defs.' Mem."). Defendants make the following arguments in support of their motion: (1) all of Moore's claims against the DOC should be dismissed because the DOC is not a "suable entity"; (2) Moore fails to set forth a plausible claim of race, color, or gender

19

discrimination because he has pled no facts "that give rise to an inference of racial or gender animus"; (3) Moore "did not exhaust his administrative remedies" under the ADA and otherwise fails "to plead facts sufficient to sustain a disability discrimination claim" under the ADA, the Rehabilitation Act, or the NYS or NYC Human Rights Laws; (4) Moore's claims under §§ 1985 and 1986 are barred by the intracorporate conspiracy doctrine; (5) Moore "has not cited to any discriminatory conduct performed pursuant to a municipal policy or custom" sufficient to establish municipal liability against the City; and (6) with respect to Defendants Pinnock, LeGoff, and Brown, Moore "has not set forth any facts establishing personal involvement in the discriminatory or retaliatory conduct." Defs.' Mem. at 1-2.

Defendants' motion does not contest the sufficiency of Moore's pleadings with respect to his claims of religious discrimination, retaliation, and his related claims of a hostile work environment pursuant to religious discrimination and retaliation. The Court therefore will not address these unchallenged claims in this Report and Recommendation and they will survive the motion to dismiss with the exception of any claims that Moore has voluntarily withdrawn, as discussed below.

On June 1, 2016, Moore's counsel filed opposition papers to Defendants' motion and requested that the Court grant Moore leave to amend his complaint should his pleadings be deemed insufficient. *See* Pl.'s Response at 25. Moore's response acknowledged that the DOC is not a suable entity and expressly withdrew all claims against it. *Id.* at 2. Moore also voluntarily and expressly withdrew claims against all Defendants brought under 42 U.S.C. § 1985 and § 1986 pursuant

20

to the intracorporate doctrine. *Id.* Moore's response also acknowledged that Title VII, Title VI, and the ADA do not provide for individual liability. *Id.* The Court therefore considers all Title VII, Title VI, and ADA claims brought against the Individual Defendants to be withdrawn. Defendants filed a reply in further support of their motion on June 21, 2016. Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, June 21, 2016, Dkt. No. 46 ("Defs.' Reply").

Accordingly, the remaining claims that Defendants seek to have dismissed are: (1) Moore's race, color, and gender discrimination claims under Title VII; (2) Moore's race and color discrimination claims under Title VI; (3) Moore's claims of race, color, and gender discrimination in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983; (4) Moore's claims of disability discrimination pursuant to the ADA and the Rehabilitation Act; (5) Moore's claims of race, color, gender, and disability discrimination pursuant to NYSHRL and NYCHRL; (6) Moore's hostile work environment claims to the extent they arise from allegations of race, color, gender, or disability discrimination; and (7) any and all claims against Individual Defendants Pinnock, LeGoff, and Brown. Defendants also oppose Moore's request for leave to further amend his complaint.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Standard Under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Accordingly,

21

Moore must plead facts in his complaint that "state a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This facial plausibility standard requires that a plaintiff plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly* 550 U.S. at 556). When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true, *id.*, and should interpret those allegations by drawing all reasonable inferences in favor of a plaintiff. *See Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (citing *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)). Nevertheless, this standard still requires a plaintiff's pleadings to sufficiently "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Although "detailed factual allegations" are not required, the standard under Rule 12(b)(6) demands that a plaintiff set forth facts that go beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" in order to support an inference of plausibility. *Iqbal*, 556 U.S. at 678 (citing *Twombly* 550 U.S. at 555, 557). The Court's assessment of a pleading's sufficiency and the plausibility of claims under Rule 12(b)(6) "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Notably, "threadbare recitals of the elements of a cause of action,

22

supported by mere conclusory statements, do not suffice" to meet the pleading standard under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Thus, claims that allege "naked assertions devoid of further factual enhancement" or plead facts that are "merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotation marks omitted). Such "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (internal quotation marks omitted); *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *Nwozuzu v. United States*, No. 14-CV-8589 (LGS), 2015 WL 4865772, at *3 (S.D.N.Y. Aug. 12, 2015).[5]

### 2.    Standard Under Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure governs a trial court's discretion in the determination of whether to allow parties to amend their pleadings, providing that "the [C]ourt should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Other than amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the [C]ourt's leave." *Id.* The Supreme Court has explained that:

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

---

[5] Moore cites to *Conley v. Gibson*, 355 U.S. 41 (1957) in his opposition papers, Pl. Mem. at 15, but this case is no longer good law after *Iqbal* and *Twombly*.

> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.—the
> leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). *See, e.g., Harris v. NYU Langone Med. Ctr.*, No. 12-CV-0454 (RA) (JLC), 2013 WL 3487032, at \*8, \*35 (S.D.N.Y. July 9, 2013), *adopted by*, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013), *aff'd*, 615 F. App'x 49 (2d Cir. 2015).

Consequently, where amendment of the pleading is "unlikely to be productive," the Court may deny leave because further amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). The futility of such an amendment is gauged by whether the proposed claim could withstand a motion to dismiss pursuant to Rule 12(b)(6). *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, a grant of leave to amend is appropriate where the complaint consists of an inartfully or inadequately pled claim, but the record nevertheless suggests the existence of a scenario that, if proven, would entitle a plaintiff to relief. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Conversely, dismissal with prejudice is appropriate where, even when the complaint is liberally construed in a plaintiff's favor, "the problem with [plaintiff's] causes of action is [a] substantive" failure to state a claim and "better pleading" of the factual allegations "will not cure it." *Id.*; *see, e.g., Heicklen v. United States Dep't of Homeland Sec.*, No. 10-CV-2239 (RJH) (JLC), 2011 WL 3841543, at \*17 (S.D.N.Y. Aug. 30, 2011).

## B.   Analysis

### 1.   Moore's Race, Color, and Gender Discrimination Claims Under Title VII Should Be Dismissed (Count 1)

Claims of facial or pretextual disparate treatment in employment, in

violation of Title VII, are evaluated pursuant to the burden-shifting framework

established by the Supreme Court in *McDonnell Douglas Corp. v. Green.* 411 U.S.

792 (1973). Under the *McDonnell Douglas* analysis, Moore must establish a *prima*

*facie* case of discrimination by alleging: (1) he is a member of a protected class; (2)

he was performing his duties satisfactorily and was qualified for the employment

position; (3) he suffered an adverse employment action; and (4) the adverse action

occurred in circumstances giving rise to an inference of discriminatory intent. *See*

*id.* at 802; *see, e.g., Smith v. City of N.Y.*, No. 12-CV-3250 (JMF), 2013 WL 1903856,

at *3 (S.D.N.Y. May 8, 2013). However, a complaint need not contain specific facts

establishing a *prima facie* case of discrimination in order to survive a motion to

dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, 511-14 (2001).

While the *McDonnell Douglas* elements of a *prima facie* case may be

informative at the pleading stage by providing "an outline of what is necessary to

render [a plaintiff's] claims for relief plausible," *Sommersett v. City of N.Y.*, No. 09-

CV-5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011), the

Second Circuit has ruled that "[t]he facts required by *Iqbal* to be alleged in the

complaint need not give plausible support to the ultimate question of whether the

adverse employment action was attributable to discrimination." *Littlejohn v. City of*

*N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). The facts pled must "only give plausible

25

support to a minimal inference of discriminatory motivation" in order to survive a

motion to dismiss. *Id.* Accordingly, a complaint alleging employment

discrimination at this initial stage must plausibly support that "plaintiff is a

member of a protected class, was qualified, suffered an adverse employment action,

and [establish] at least minimal support for the proposition that the employer was

motivated by discriminatory intent." *Id.*

The Second Circuit has found that a plaintiff may establish such a minimal

"inference of discrimination" through factual allegations of:

> circumstances including, but not limited to, "the employer's
> criticism of the plaintiff's performance in ethnically degrading
> terms; or its invidious comments about others in the employee's
> protected group; or the more favorable treatment of employees
> not in the protected group; or the sequence of events leading to
> the plaintiff's discharge."

*Id.* at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir.

2009)). Even in the absence of direct evidence indicating discriminatory bias,

"[t]he fact that a plaintiff was replaced" or treated less favorably "by someone

outside the protected class will ordinarily suffice for the required inference of

discrimination at the initial . . . stage of the Title VII analysis." *Id.* at 313

(citing *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.

2001)). However, a plaintiff's claim "must offer more than conclusory

statements," and "the complaint must contain factual allegations supporting

the plausible inference that the employer discriminated against the plaintiff

*because of* the plaintiff's protected characteristic." *Edwards v. New York*

*State Unified Court Sys.*, No. 12-CV-46 (WHP), 2012 WL 6101984, at *4

26

(S.D.N.Y. Nov. 20, 2012) (emphasis added); *see also Alvarez v. Rosa*, No. 11-CV-3818 (KBF), 2012 WL 651630, at \*2 (S.D.N.Y. Feb. 28, 2012). "In the absence of such allegations, dismissal at the pleading stage is warranted." *Perry v. State Dep't of Labor*, No. 08-CV-4610 (PKC), 2009 WL 2575713, at \*2–3 (S.D.N.Y. Aug. 20, 2009) (dismissing Title VII discrimination claims because, "[t]o the limited extent" that the plaintiff "asserts discrimination, [he] does so only in a conclusory fashion," and citing the following examples: "I was denied an interview based upon discriminatory bias . . . ."; "As a 48 year old African-American male I allege that the [DOL] discriminated against me in violation of Title VII . . . ."; merely "citing statistics concerning minority composition of New York state public workforce") (internal citations omitted), *aff'd by* 398 F. App'x 628 (2d Cir. 2010).

Despite this lower burden at the pleading stage, Moore has failed to allege facts that minimally support an inference of discrimination with respect to his race and gender. Although Moore sufficiently pleads the first three elements of the *McDonnell Douglas* test, Moore's TAC contains no factual allegations to suggest that any of the adverse employment actions he suffered were motivated by animus towards his race or gender.[6] Beyond merely identifying himself as an African American male and noting that a number of Defendants involved in the alleged adverse actions suffered by Moore are "white" and/or "female," Moore proffers no

---

[6] Moore's pleading alleges that he belongs to a protected class, was at all times qualified for his position as a captain at the DOC, and suffered various adverse employment actions.

other facts to support his claim that Defendants took action against him because of his membership in a protected class. *See, e.g.*, TAC ¶¶ 11, 16, 17, 20, 23, 26, 29.

Significantly, while Moore alleges that Defendants made comments regarding his religion and that employees who were members of other religions received more favorable treatment, *see* TAC ¶¶ 57-60, 69, he does not allege that Defendants made any comments or engaged in disparate treatment on the basis of his race, color, or gender. Instead, the TAC is rife with unsupported and conclusory restatements of the fourth prong of the *McDonnell Douglas* test, asserting solely that Moore was discriminated against because of his race or gender or that Defendants had no non-discriminatory reasons for their actions, without any further factual allegations suggesting an inference of underlying racial or gender animus. TAC ¶¶ 3, 9, 52, 61, 74, 81, 109, 115, 120, 126, 129, 174, 175, 180, 182; *see, e.g.*, *Gertskis v. U.S. EEOC*, No. 11-CV-5830 (JMF), 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013) (collecting cases finding that plaintiff's Title VII claims failed because they were "conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct"); *Perry*, 2009 WL 2575713, at *3 ("Such assertions constitute the type of 'labels and conclusions' or the 'formulaic recitation of the elements of a cause of action' deemed by *Twombly* as insufficient to state a claim for relief. The complaint is otherwise silent as to any discriminatory purpose or motivation directed toward the plaintiff.") (citation omitted).

In his response to Defendants' motion, Moore argues that his pleadings of race and gender discrimination are legally sufficient based on a continuing violation

theory. *See* Pl.'s Response at 14-17. Under this theory, a plaintiff may rely on a series of related acts or earlier discriminatory conduct outside the statute of limitations period as evidence to support a timely and actionable Title VII claim by establishing that defendants engaged in an ongoing pattern, policy, or practice of discrimination. *See AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002). Significantly, a plaintiff must relate that earlier conduct to at least one independent act of similar discrimination that occurred within the statute of limitations period. *Id.* at 113, 116-18; *see, e.g., Harris*, 2013 WL 3487032, at *21 ("The continuing violation exception 'exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination,' where one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.") (quoting *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010)) (additional internal quotation marks omitted); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.").

Here, Moore contends that he has presented evidence in his TAC to support an inference of race and gender discrimination by "continually incorporat[ing] by reference . . . the numerous EEO Complaints, the two EEOC charges of discrimination and the verbal complaints Plaintiff made to Defendants regarding race, gender and hostile work environment claims based on his status as an African American" prior to March 2013. Pl.'s Response at 14. Nevertheless, Moore is

29

unable to support a continuing violation claim because he has failed to plead any

facts to support an inference that animus based on race or gender motivated any of

the allegedly discriminatory incidents that occurred within the statute of

limitations period.  Instead, as explained above, Moore's descriptions of these

incidents are entirely conclusory.  *See, e.g., Carroll v. New York*, No. 14-CV-00479

(MAD) (ATB), 2014 WL 6387125, at \*3 (N.D.N.Y. Nov. 14, 2014) ("Plaintiff's

argument that the continuing violation doctrine should be applied by the Court

fails, as she does not provide the Court with any specific acts of discrimination that

occurred within the statutory . . . time period"); *see also Gertskis*, 2013 WL 1148924,

at \*8 (collecting cases); *Perry*, 2009 WL 2575713, at \*3-4.

　　Moore additionally devotes a significant portion of his response to a recitation

of numerous cases decided between 1987 and 2015 in which the City and the DOC

were alleged and often found to have engaged in race and gender discrimination.

*See* Pl.'s Response at 15-17 (citing cases).  Noting that Defendants "are plagued with

a long history of allegations of race and gender discrimination complaints by their

employees, along with violations of settlements of discrimination complaints,"

Moore submits this list to support an inference that he is one more employee in an

ongoing "pattern and practice" of unlawful race and gender discrimination.  *Id.* at

15, 17.  But this argument is also unsuccessful because Moore has failed to proffer

facts supporting an inference of gender or race-based discrimination with respect to

the incidents recounted in his complaint, which is required to connect that conduct

to any claimed discriminatory policy or practice.  *See Carroll*, 2014 WL 6387125, at

*3-4 (dismissing Title VII claims in part because allegations were too conclusory to support that a discriminatory act related to the alleged ongoing policy or practice occurred within the statutory period as required on a continuing violation theory); *see, e.g., Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012) (although evidence "that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case," this "cannot relieve the plaintiff of the need to establish each element of his or her claim"). Further, to the extent Moore is attempting to set forth evidence of a pattern or practice as a theory of liability distinct from his continuing violation theory, this argument also fails because "the pattern-or-practice method of proof is not available to nonclass, private plaintiffs in [employment discrimination] cases." *Chin*, 685 F.3d at 149-50; *see also Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498, 505 (S.D.N.Y. 2013).

Accordingly, Moore's failure to plead any facts to specifically support the inference that he was the target of discrimination because of his race, color, or gender during the relevant time period is fatal to his claims, whether based on the factors of the *McDonnell Douglas* test or on a continuing violation theory. The Court therefore recommends that Moore's claims of discrimination on the basis of race, color, or gender pursuant to Title VII be dismissed with respect to all Defendants. *See Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (affirming dismissal on a 12(b)(6) motion "because plaintiffs do not allege any facts supporting an inference of racial animus"); *Harris*, 2013 WL 3487032, at *15

31

("'[w]ithout actual facts demonstrating discriminatory animus,' . . . [plaintiff's] Title VII [employment discrimination claim] should be dismissed.") (quoting *Ortiz v. Std. & Poor's*, No. 10-CV-8490 (NRB), 2011 WL 4056901, at *4 (S.D.N.Y. Aug. 29, 2011)).

## 2. Moore's Race and Color Discrimination Claims Under Title VI Should Be Dismissed (Count 2)

Moore has likewise failed to state a claim pursuant to Title VI. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, Moore is required plausibly to allege that he was discriminated against "(1) . . . based on race, color, or national origin; (2) such discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for defendants' actions." *Kajoshaj v. N.Y. City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) (internal quotation marks omitted); *see also, e.g., McCrudden v. E*Trade Fin. Corp.*, No. 13-CV-8837 (WHP), 2014 WL 3952903, at *3 (S.D.N.Y. Aug. 12, 2014); *Biswas v. City of N.Y.*, 973 F. Supp. 2d 504, 531 (S.D.N.Y. Sept. 30, 2013).

In order to establish the plausible inference necessary to survive a motion to dismiss, claims of racial discrimination under Title VI must demonstrate a causal link between the defendants' alleged discriminatory actions and the plaintiff's race. *See, e.g., Diaz v. City Univ. of N.Y.*, No. 15-CV-1319 (PAC) (MHD), 2015 U.S. Dist. LEXIS 155496, at *23 (S.D.N.Y. Nov. 16, 2015) (citing *Tolbert* 245 F.3d at 69); *Williams v. City Univ. of N.Y.*, No. 13-CV-1055 (CBA) (LB), 2014 WL 4207112, at *8

(E.D.N.Y. Feb. 7, 2014) (citing *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 528 (S.D.N.Y. 1999)).  Moreover, a plaintiff must also "plausibly allege not only that the defendant was an entity receiving federal funding and engaged in intentional discrimination based on the plaintiff's race, color, or national origin, but also that the federal funds [were] made available primarily for providing employment." *Sulehria v. New York*, No. 13-CV-6990 (AJN), 2014 WL 4716084, at *5 (S.D.N.Y. Sep. 19, 2014) (citing *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)); *see also Acheampong v. N. Y. City Health & Hosps. Corp.*, No. 11-CV-9205 (LTS) (SN), 2015 WL 1333242, at *14 (S.D.N.Y. Mar. 25, 2015).  Finally, a plaintiff must sufficiently set forth "a 'logical nexus' between the federally funded program and the employment discrimination suffered" that is supported by evidence proffered in the complaint.  *Acheampong*, 2015 WL 1333242, at *14 (quoting *Commodari v. Long Isl. Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000)).

Significantly, "[a] plaintiff alleging discrimination [under Title VI] 'must do more than recite conclusory assertions.  In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'"  *McCrudden*, 2014 WL 3952903, at *3 (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994)).  Conclusory statements of the elements of a discrimination claim or formulaic allegations that a plaintiff was treated differently or discriminated against by Defendants due to his race are

33

insufficient to raise a plausible claim for relief under Title VI. *See Kajoshaj*, 543 F. App'x at 14 (collecting cases).

As discussed with regard to his Title VII claims, Moore fails to set out sufficiently specific factual allegations in his TAC to establish the necessary causal link between the incidents he recounts and a plausible inference of racial animus. *See supra* Part II.B.1. The Court therefore recommends that Moore's claims of race and color discrimination under Title VI be dismissed on these grounds as well. *See, e.g., Kajoshaj* 543 F. App'x at 13-15 (affirming dismissal of Title VI claims on grounds that although plaintiffs "repeatedly assert that defendants took [discriminatory] actions because of plaintiffs' [protected class], their complaint is devoid of factual allegations that would reasonably give rise to such an inference" because "[p]laintiffs do not, for instance, assert that any defendant referenced their [protected characteristics], much less that they did so in a derogatory manner," and their "naked allegation that they were treated differently" from those outside their protected class "cannot demonstrate a plausible entitlement to Title VI relief") (internal quotations and citations omitted); *Diaz*, 2015 U.S. Dist. LEXIS 155496, at *25 ("Plaintiff simply fails to allege any specific facts that would support . . . a theory [that his alleged mistreatment was due to discriminatory animus], and his conclusory allegations of discrimination do not suffice to meet his pleading burden."); *Sulehria*, 2014 WL 4716084, at *6 ("[Plaintiff's] allegations are merely restatements of the matters one must prove to state a discrimination claim; they do not plausibly state any facts that would tend to show discrimination."); *McCrudden*,

2014 WL 3952903, at *3-4 (dismissing Title VI claims for failure to "allege any

reason to believe [plaintiff] was discriminated against on the basis of race, color, or

national origin").

Even if Moore had adequately raised a plausible inference of discriminatory

animus based on race or color, his Title VI claims additionally fail because he has

not sufficiently pled that "a primary objective of the Federal financial assistance is

to provide employment." 42 U.S.C. § 2000d-3; *see also Sulehria*, 2014 WL 4716084,

at *5 (citing *City of Bridgeport*, 647 F.2d at 276). Moore solely alleges, "upon

information and belief," that the City and the DOC "receive federal financial

assistance and funds for [sic] earmarked primarily for employment." TAC ¶ 114.

This declaration amounts to a conclusory restatement of the law; it is unsupported

by any factual allegations regarding such a funding program or additional evidence

that would allow the Court plausibly to infer that the requisite logical nexus exists

between the federally funded program and the claimed employment discrimination.

*See Raghavendra v. Trs. of Columbia Univ.*, No. 06-CV-6841 (PAC) (HBP), 2008 WL

2696226, at *11 (S.D.N.Y. July 7, 2008) (dismissing plaintiff's Title VI claims

against his employer because he proffers "no specific allegations about [his]

position, termination, or any other connection to a federal program" despite

including generic press reports and statistics to substantiate these claims in his

complaint).[7]

---

[7] Although Moore argues in his Response that "considering the nature of DOC and
Defendant NYC, there is a strong inference that Plaintiff's belief is correct," he
makes no such contention in the TAC. Pl.'s Response at 22.

Accordingly, the Court recommends that Moore's Title VI claims be dismissed.[8]

### 3. Moore's Claims of Race, Color, and Gender Discrimination in Violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 Should Be Dismissed (Counts 3 & 4)

Pursuant to 42 U.S.C. § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As such, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson*, 375 F.3d at 224. When a defendant is a state actor—such as the City or an Individual Defendant acting in his or her official capacity as a government employee—42 U.S.C. § 1983 is the "*exclusive* federal remedy for violation of rights guaranteed in § 1981," and a plaintiff must additionally assert a claim pursuant to Section 1983 in seeking damages for such a violation. *Id.* at 225 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Section 1983 establishes a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and

---

[8] As Defendants also point out, there is no individual liability available under Title VI. Defs.' Mem. at 11 (citing cases). This is yet another basis for the Title VI claims to be dismissed against the Individual Defendants.

laws." 42 U.S.C. § 1983.

"Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause . . . ." *Patterson*, 375 F.3d at 225 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (regarding Section 1981); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (regarding Section 1983)). Accordingly, Moore's race and gender discrimination claims under Section 1981 and Section 1983 against both the City and the Individual Defendants are similarly evaluated pursuant to the *McDonnell Douglas* framework and the pleading standard described above. *See, e.g.*, *Littlejohn*, 795 F.3d at 312 (citing *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)); *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011) (citing *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008)).

The Court therefore finds that, for the same reasons described above, Moore has failed to plead facts that minimally support an inference of discriminatory intent based on race, color, or gender as required to support his Section 1981 and 1983 claims. *See supra* Part II.B.1. Moore's claims of race, color, and gender discrimination in violation of Section 1981 and Section 1983 should thus be dismissed as to all Defendants. *See Bermudez*, 783 F. Supp. 2d at 580-81, 584-85 (dismissing race and gender discrimination claims under Sections 1981 and 1983 for failure to allege facts connecting adverse employment actions by defendants to inference of discriminatory animus).

Even if the Court were to find that Moore adequately pled underlying claims of employment discrimination, in order to state a claim under Sections 1981 and 1983 against the City and the Individual Defendants, Moore must plead facts to establish that "the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226; *see, e.g.*, *Jett*, 491 U.S. at 733-36 (Section 1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978) (Section 1983); *Littlejohn*, 795 F.3d at 314; *Toliver v. City of N.Y.*, No. 10-CV-5806 (SHS) (JCF), 2012 WL 6849720, at *5-6 (S.D.N.Y. Sep. 25, 2012).

To adequately plead the existence of a municipal policy or custom, a plaintiff need not identify "an express rule or regulation." *Littlejohn*, 795 F.3d at 314-15 (citation omitted). Instead, a plaintiff may satisfy this burden by alleging facts to demonstrate that municipal officials with ultimate policymaking authority engaged in a discriminatory practice that "was so persistent or widespread as to constitute a custom or usage with the force of law." *Id.*; *see also Toliver*, 2012 WL 6849720, at *6. A plaintiff may alternatively set forth facts alleging that "a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Littlejohn*, 795 F.3d at 314-15 (quoting *Patterson*, 375 F.3d at 226); *Toliver*, 2012 WL 6849720, at *6. "The critical characteristic" in determining who has final policymaking authority in the employment context is whether a particular "municipal official has authority to formulate the rules governing personnel decisions rather than authority to make decisions pursuant to those rules." *Williams v. City of N.Y.*, 690 F. Supp. 2d 338,

38

344 (S.D.N.Y. 2010); *see also Baity v. Kralik*, 51 F. Supp. 3d 414, 439-40 (S.D.N.Y. 2014) (collecting cases).

In light of the requirement that a plaintiff must plead the existence of a municipal policy or practice to set out a claim of municipal liability, "a municipality cannot be held liable for the acts of its employees based on a doctrine of *respondeat superior*." *Toliver*, 2012 WL 6849720, at \*5 (citing *Monell*, 436 U.S. at 691-95). Additionally, if a plaintiff fails to establish liability of the individual state actors for the alleged constitutional violation, then that plaintiff cannot establish municipal liability for the City. *Bermudez*, 783 F. Supp. 2d at 578 (quoting *Thompson v. Tracy*, 00-CV-8360 (CM) (FM), 2008 WL 190449, at \*1 (S.D.N.Y. Jan. 17, 2008)). Notably, in order to plead facts supporting a discriminatory policy, pattern, or custom claim under a continuing violation theory, a "plaintiff must allege the occurrence of at least one discriminatory act during the statute of limitations period." *Bermudez*, 783 F. Supp. 2d at 575 (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998); *Browne v. N.Y. State Officials of Mental Health*, 8 F. App'x 129, 130-31 (2d Cir. 2001)).

Here, Moore has not alleged any facts from which the Court could infer that the adverse employment actions he describes took place in accordance with a widespread municipal policy or custom of discrimination set by municipal officials with ultimate policymaking authority. Moore simply states that various Individual Defendants are "policymakers within" the City and possess "authority, power, and capacity" with respect to personnel and employment decisions and policy at the

DOC. TAC ¶¶ 16-31. Such allegations are insufficient because, even if Defendants enjoy supervisory positions within the DOC and made particular decisions with respect to the terms of Moore's employment, Moore has not alleged that Defendants are government lawmakers or "final municipal policymakers" capable of setting municipal policy. *See, e.g., Littlejohn*, 795 F.3d at 315 (affirming dismissal of Section 1983 discrimination claim based on proposition that "the New York City Charter vests final policymaking authority in the Mayor and City Council and . . . the Charter vests policymaking authority with respect to personnel decisions with the City's Personnel Director") (internal alterations and quotation marks omitted); *Baity*, 51 F. Supp. 3d at 437-40 (explaining that "the authority to make individual employment decisions [is] not sufficient to make an official a policymaker for the purposes of *Monell* liability"). Moore consequently has failed to establish the "critical characteristic" that Defendants had authority to create the overarching rules governing personnel decisions in the DOC as opposed to the authority to make decisions in line with these broader guidelines.

Moreover, Moore does not allege any facts to support a claim that the Individual Defendants' personnel decisions and conduct towards him constituted "a persistent or widespread municipal policy or custom with the force of law that enabled the discrimination against [him]." *Littlejohn*, 795 F.3d at 315 (internal alterations and quotation marks omitted). Moore simply repeats "general and conclusory allegation[s] that there was such a policy" and that it resulted in systemic abuses. *Id.*; *see* TAC ¶¶ 16, 19, 22, 25, 28, 31. As Moore fails to state a

Section 1983 claim against the Individual Defendants with respect to their personal
involvement in race or gender discrimination, his complaint cannot support a claim
of municipal liability against the City. *See Bermudez*, 783 F. Supp. 2d at 578.

Moore argues in his response to Defendants' motion that he adequately pled
facts in support of municipal liability by (1) alleging that Defendants engaged in a
pattern of discriminatory practices that were the subject of the March 2013
settlement and continued after it, and (2) providing the Court with a "long list of
cases in which Defendant NYC has continued to discriminate against employees
based on their race, as African Americans and their gender as well as showing an
established practice of ignoring settlement agreements with employee[s] regarding
discriminatory practice[s]." Pl.'s Response at 21. However, Moore's attempt to
support his current claims through a continuing violation theory, which
incorporates alleged violations prior to the March 2013 settlement, necessarily fails
because he does not connect the alleged discriminatory policy or custom to any
adequately pled instance of discrimination within the statute of limitations period.
*See supra* Part II.B.1. Further, the list of other employment discrimination cases
brought against the City cannot adequately support Moore's claim under Sections
1981 and 1983 because he has not identified what policy or custom these cases
illustrate (besides the conclusory statement that they demonstrate a practice of
ignoring settlement agreements), or even the connection between these cases and
the alleged discrimination perpetrated against him. *See, e.g., Fierro v. N.Y.C. Dep't
of Educ.*, 994 F. Supp. 2d 581, 588 (S.D.N.Y. 2014) ("[T]o establish *Monell* liability, a

plaintiff must show . . . '(1) the existence of a municipal policy or custom that caused his injuries beyond merely employing the misbehaving officers; and (2) a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights.'") (quoting *Harper v. City of N.Y.*, 424 F. App'x 36, 38 (2d Cir. 2011)) (internal alterations omitted).[9]

The Court consequently recommends that Moore's race and gender discrimination claims pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983 be dismissed as to all Defendants for failure to state a claim.

> ### 4. Moore's Claims of Disability Discrimination Pursuant to the ADA and the Rehabilitation Act Should Be Dismissed (Counts 7 & 8)

> #### a. Moore Fails to State a Claim Under Title II of the ADA

As an initial matter, the parties dispute whether Moore's claim of disability discrimination is cognizable under Title II of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

---

[9] The Court also is not persuaded that Moore's recitation of a list of unconnected employment discrimination cases against Defendants—a list which is not included in Moore's complaint and is not meaningfully related to the specific facts or circumstances set forth in his pleadings—can establish that Defendants' actions in this case were representative of a policy, pattern, or practice of race and gender discrimination. *See Wang v. Palmisano*, 51 F. Supp. 3d 521, 529 (S.D.N.Y. 2014) (when "adjudicating a Rule 12(b)(6) motion [in an employment discrimination suit], a district court must confine its consideration to facts stated on the face of the complaint") (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

42 U.S.C. § 12132. In bringing a Title II action, a complainant must establish "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (quoting *Hargrave v. Vt.*, 340 F.3d 27, 34-35 (2d Cir. 2003)).

The Second Circuit has provided that claims of disability discrimination regarding access to the "public services, programs, and activities," which are the subject of Title II of the ADA, are distinct from employment-related disability discrimination claims. *See Mary Jo C.*, 707 F.3d at 169 (quoting *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)). Claims of disability discrimination in employment are properly brought pursuant to Title I of the ADA, which provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Mary Jo C.*, 707 F.3d at 168-73 (affirming dismissal of public employee's discrimination claims under Title II of the ADA on grounds that Title I is the "exclusive remedy for plaintiff's claims of [disability] discrimination against [an employer] . . . relat[ing] to the terms, conditions, and privileges of . . . employment") (internal quotation marks omitted); *see also Volpe v. N.Y.C. Dep't of Educ.*, No. 15-CV-7110 (KBF), 2016 WL 3910667, at

43

*7 (S.D.N.Y. July 14, 2016); *Klaes v. Jamestown Bd. of Pub. Utils.*, No. 11-CV-606
(RJA), 2013 WL 1337188, at *12-13 (W.D.N.Y. Mar. 29, 2013).

Reciting the elements of a Title II claim, Moore contends that (1) he is a
qualified individual because he suffers from a disability as a result of his exposure
to a chemical agent at work; (2) the City and the DOC are public entities that
denied him services of pistol permitting and gun licensing by neglecting to issue his
Good Guy Letter; and (3) this discrimination was due to his disability. *See* TAC ¶¶
89-90, 92-105, 107, 147-54. Defendants argue that Moore's disability discrimination
claims should be dismissed because they amount to charges of employment
discrimination that are not covered under Title II and instead fall under the
purview of Title I. *See* Defs.' Reply at 4-5. In response, Moore asserts that his
disability discrimination claims properly fall under Title II because they are based
on Defendants' allegedly discriminatory failure to issue him a Good Guy Letter,
which he contends is a service that the City and the DOC provide as public entities
and that he should receive as a retired correctional officer. *See* Pl.'s Response at 23-
24; TAC ¶¶ 146-56.

The Court finds that Moore's claims fall squarely within the umbrella of Title
I and outside the confines of Title II. Moore brings an ADA claim against his *former
employer* for allegedly discriminating against him in denying him services and
privileges he was entitled to as a *retired correctional employee. See Mary Jo C.*, 707
F.3d at 168-73 (affirming dismissal of Title II claim of disability discrimination
against plaintiff's former employer, a qualifying government entity, which denied

44

her retirement benefits after terminating her because of her disability, and finding that plaintiff's exclusive remedy against her employer was pursuant to Title I). As Defendants have noted, Moore applied for his Good Guy Letter during his employment, his application was part of his *retirement* paperwork, and his claimed comparators are similarly-situated Captains or Correction Officers who retire without a physical disability. Defs.' Reply at 4 (citing TAC ¶¶ 38-39, 104). Consequently, the Court recommends that Moore's Title II claim be dismissed with respect to all Defendants. *See, e.g.*, *Volpe*, 2016 WL 3910667, at *7 (noting that, where plaintiff asserts Title II claim of "discrimination in employment on the basis of an employee's disability," this would fall under Title I); *Klaes*, 2013 WL 1337188, at *13 (dismissing Title II claims upon finding that "Plaintiff is prohibited from asserting a claim against [employer] under Title II of the ADA, in so far as his allegations are related to the terms, conditions and privileges of his employment and are [thereby] covered by Title I.").

Assuming, *arguendo*, that Moore's employment discrimination claims are cognizable under Title II, Moore would nevertheless fail to state a disability claim pursuant to the ADA. As with a discrimination claim under Title VII, a plaintiff must plead factual allegations supporting a plausible inference that he was discriminated against "by reason of [his] disability" in order to state a claim under Title II of the ADA. 42 U.S.C. § 12132; *see, e.g.*, *Sneed v. City of N.Y. Dep't of Parks & Rec.*, No. 10-CV-299 (WHP), 2011 WL 4542960, at *3 (S.D.N.Y. Sep. 30, 2011) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004); *Atkins v.*

45

*Cnty. of Orange*, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003). This element "requires the disabled plaintiff to allege that his mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'" *Sneed*, 2011 WL 4542960, at *3 (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001)). A bare assertion of discriminatory animus, without any specific factual support, is not sufficient to state a claim under the ADA. *See, e.g., Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (citing *Twombly* plausibility standard and dismissing ADA claims partly on grounds that the "facts alleged in [plaintiff's] complaint provide no direct evidence of [disability] discrimination" or suggestion of a discriminatory motive); *Smith v. Reg'l Plan Ass'n*, No. 10-CV-5857 (BSJ) (KNF), 2011 WL 4801522, at *6 (S.D.N.Y. Oct. 7, 2011) ("[Plaintiff] has not claimed that she was subject to any adverse action . . . because of her disability. Without actual facts demonstrating discriminatory animus, discrimination is just one possibility for [defendant's] actions—as such, plaintiff's claim may be conceivable, but it is certainly not plausible.") (internal alterations and quotation marks omitted).

Despite drawing all reasonable inferences in his favor, the Court finds that Moore's pleadings do not set forth this essential element of his Title II claim. *House v. Wackenhut Servs.*, No. 10-CV-9476 (CM) (FM), 2012 WL 4017334, at *1 (S.D.N.Y. Aug. 20, 2012) (discussing insufficiency of such conclusory allegations in complaints alleging employment discrimination); *see also Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010). Here, Moore's contention that he

was denied the Good Guy Letter because of his disability provides no facts or

allegations beyond a restatement of the elements of Title II and the conclusory

assertion that Defendants had no good-faith basis for this denial. *See* TAC ¶¶ 103,

105-07. Additionally, while Moore asserts that "Defendants do not treat similarly-

situated Captains or Corrections [sic] Officers who retire without a physical

disability as they have treated Plaintiff," he does not plead a single fact about

individual comparators or other specific evidence of disparate treatment. TAC ¶

104. Moore's pleadings thus fail to raise his ADA claims beyond the level of

speculation and cannot support a plausible inference of disability discrimination in

order to survive a motion to dismiss.[10]

The Court concludes that Moore has failed to plead plausible facts showing

that an adverse employment action was taken against him because of his

disability.[11] Accordingly, the Court recommends that Moore's disability claim

---

[10] The Court notes that Moore, in his response to Defendants' motion, contends that
he has sufficiently stated a claim of disability discrimination in light of his
allegation that, upon inquiring into the status of his letter, he was informed it was
under investigation. *See* Pl.'s Response at 24. Moore argues, for the first time, that
this fact is evidence of disability discrimination because "the only plausible
'investigation' would be into Plaintiff's disability," as "[t]here were no pending
disciplinary charges against Plaintiff when he retired." *Id.* However, even if this
were evidence from which the Court could infer Defendants' discriminatory intent
(and it is not clear that it can), Moore did not assert the absence of any pending
disciplinary charges against him in his TAC and the Court cannot draw such an
inference without any factual pleading to corroborate it. *See Goodman v. Port Auth.
of N.Y. & N.J.*, 850 F. Supp. 2d 363, 383 (S.D.N.Y. 2012) ("an assertion, made for
the first time in opposition to a motion to dismiss [plaintiff's discrimination
complaint], is clearly inadmissible to cure a defect in the complaint.").

[11] Even if Plaintiff had properly pled his disability discrimination claims under Title
I of the ADA, they would also fail to withstand a motion to dismiss. In order to

47

pursuant to Title II be dismissed as to all Defendants. *See, e.g., Harris*, 2013 WL

3487032, at *18 ("[I]f [plaintiff] fails to plead plausible facts showing that an

adverse employment action was taken against her because of her perceived

disability, her disability claim should be dismissed."); *Jackson*, 2012 WL 868965, at

*6 ("Where, as here, plaintiff has not pled any connection between a disability and

an adverse employment action, dismissal is appropriate."); *Smith*, 2011 WL

4801522, at *6 (dismissing ADA claim in part because there was no allegation that

any adverse action was "because of [plaintiff's] disability").

### b.     Moore Fails to State a Claim Under the Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability in the United States . . . shall, solely by reason of her or

---

establish a *prima facie* case of employment discrimination pursuant to Title I of the
ADA, a plaintiff must show: "(a) that his employer is subject to the ADA; (b) that he
is disabled within the meaning of the ADA or perceived to be so by his employer; (c)
that he was otherwise qualified to perform the essential functions of the job with or
without reasonable accommodation; and (d) that he suffered an adverse
employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531
F.3d 127, 134 (2d Cir. 2008). As with his Title II claim, Moore has not pled
sufficient facts to support a plausible inference that the adverse employment action
was motivated by discrimination on the basis of his disability. *See, e.g., Klaes*, 2013
WL 1337188, at *7-9. Moore has also failed to satisfy the exhaustion requirement
that "Title I incorporates . . . [from] Title VII of the Civil Rights Act of 1964," in
which a claimant must "file a charge of employment discrimination with the EEOC
within 180 days after the discriminatory act" as a precedent to bringing a lawsuit in
connection with that charge. *Mary Jo C.*, 707 F.3d at 170 n.10 (quoting *McInerney
v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (citing 42 U.S.C. §
2000e-5(e)(1))). Moore did not allege disability discrimination in the EEOC charge
which gave rise to this lawsuit and therefore has failed to exhaust his
administrative remedies with respect to this claim as required by statute. *See*
Complaint; Fain Decl. Ex. A.

his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act directs that the "standards used to determine whether this section has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under [T]itle I" of the ADA. 29 U.S.C. § 794(d). Likewise, "the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504" of the Rehabilitation Act. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

"[B]ecause Section 504 of the Rehabilitation Act and the ADA impose identical requirements," disability discrimination claims under both statutes may be considered in tandem. *Hargrave*, 340 F.3d at 35 (quoting *Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999)). Consequently, and for the same reasons that his allegations fail to state a claim under either Title I or Title II of the ADA, Moore's corresponding claims under the Rehabilitation Act should be dismissed as to all Defendants.[12]

### 5. Moore's Claims of Race, Color, Gender, and Disability Discrimination Pursuant to NYSHRL and NYCHRL Should Be Dismissed (Count 9)

It is a violation of New York State and New York City Human Rights Law for

---

[12] Any claims against the Individual Defendants pursuant to the Rehabilitation Act also are barred because the statute does not provide for individual liability. *See, e.g., Nelson v. City of N.Y.*, No. 11-CV-2732 (JPO), 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013).

49

an employer to take adverse employment actions against an employee because of
that employee's race, color, gender, or disability.  N.Y. Exec. Law § 296(1)(a);
N.Y.C. Admin. Code § 8-107(1)(a).  NYSHRL and NYCHRL provide for individual
liability in the context of employment discrimination, making it unlawful "for any
person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [by
these anti-discrimination statutes] or to attempt to do so."  N.Y. Exec. Law § 296(6);
N.Y.C. Admin. Code § 8-107(6).

### a.    Moore Fails to State a Claim Under the NYSHRL

"The elements of a successful employment discrimination claim are virtually
identical" under Federal and New York State law.  *Kremer v. Chem. Constr. Corp.*,
456 U.S. 461, 479 (1982); *see also Goodman*, 850 F. Supp. 2d at 385-86 (collecting
cases).  Accordingly, the pleading standards for NYSHRL claims of employment
discrimination based on race, color, and gender are similarly analyzed under the
*McDonnell Douglas* framework and a complaint that fails to state a claim under
Title VII due to insufficient pleading likewise fails to state a claim under NYSHRL.
*See, e.g.*, *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Szewczyk v.
City of N.Y.*, No. 15-CV-918 (MKB), 2016 WL 3920216, at *3-4 (E.D.N.Y. July 14,
2016); *Thelwell v. City of N.Y.*, No. 13-CV-1260 (JGK), 2015 WL 4545881, at *12
(S.D.N.Y. July 28, 2015).  Accordingly, the Court finds that, for the same reasons
that Moore has not adequately pled facts to plausibly support a minimal inference
of employment discrimination based on his race, color, or gender pursuant to Title
VII, his corresponding claims against the City under NYSHRL do not meet the

requisite *Twombly* and *Iqbal* pleading standards. *See supra* Part II.B.1. The Court therefore recommends that Moore's NYSHRL claims of employment discrimination on the basis of race, color, and gender be dismissed.

Moore's claims of disability discrimination pursuant to NYSHRL are also deficient. "A claim of disability discrimination under the New York State Human Rights Law is governed by the same legal standards as govern federal ADA claims" and, correspondingly, Rehabilitation Act claims. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000)) (internal citation omitted). Because Moore fails to sufficiently plead his disability discrimination claims pursuant to these federal statutes, the Court finds that his analogous claim under NYSHRL fails on the same basis and recommends that it also be dismissed as to all Defendants. *See supra* Part II.B.3; *see, e.g., id.; Pugliese v. Verizon N.Y., Inc.*, No. 05-CV-4005 (KMK), 2008 WL 2882092, at *1 n.2 (S.D.N.Y. July 9, 2008).

### b.   Moore Fails to State a Claim Under the NYCHRL

The Local Civil Rights Restoration Act of 2005 established that, despite borrowing considerable language from comparable federal and state statutes, NYCHRL must be interpreted independently and be more liberally construed to favor the plaintiff in discrimination cases "for the accomplishment of . . . uniquely broad and remedial purposes." N.Y.C. Local L. No. 85 of 2005 §§ 1, 7; *see, e.g., Harris*, 2013 WL 3487032, at *25 ("The NYCHRL should be broadly construed 'in favor of discrimination plaintiffs, to the extent that such a construction is

51

reasonably possible.'") (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)); *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009). While federal and state law "may be used to aid in interpretation," they should be considered "a floor below which the City's Human Rights law cannot fall." N.Y.C. Local L. No. 85 of 2005 § 1.

Notwithstanding this independent and more liberal standard, employment discrimination claims pursuant to NYCHRL are analyzed under the same *McDonnell Douglas* framework applicable to Title VII and NYSHRL claims. *See, e.g., Ruiz v. City of N.Y.*, No. 14-CV-5231 (VEC), 2015 WL 5146629, at \*2 (S.D.N.Y. Sep. 2, 2015); *Bermudez*, 783 F. Supp. 2d at 587. Accordingly, plaintiffs are still required to plead evidence from which discrimination can be inferred to support a claim that they were "treated less well at least in part *because of*" their race, gender, color, or disability. *See Mihalik*, 715 F.3d at 110 (internal quotation marks omitted); *see, e.g., Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at \*7 (S.D.N.Y. Feb. 5, 2016); *Humphries v. City Univ. of N.Y.*, No. 13-CV-2641 (PAE), 2013 WL 6196561, at \*12 (S.D.N.Y. Nov. 26, 2013) (dismissing plaintiff's NYCHRL claim for failure to "plead *any facts* that could give rise to an inference that [the adverse employment actions were] motivated by race or gender discrimination").

Here, Moore's TAC does not meet even the minimal pleading burden under NYCHRL by failing to allege any facts that can support an inference of discriminatory intent. *See e.g., Harris*, 2013 WL 3487032, at \*25 ("[Dismissal] is appropriate where, as here, a plaintiff's allegations fail to include any plausible

suggestion of discriminatory intent."); *Durant v. N.Y.C. Hous. Auth.*, No. 12-CV-937 (NGG) (JMA), 2013 WL 1232501, at *11 (E.D.N.Y. Mar. 4, 2013) (recommending dismissal of discrimination claims under NYCHRL despite more liberal standard where plaintiff's allegations failed to suggest discriminatory intent), *adopted by* 2013 WL 1247516 (E.D.N.Y. Mar. 26, 2013); *Shallow v. Scofield*, No. 11-CV-6028 (JMF), 2012 WL 4327388, at *6 (S.D.N.Y. Sept. 21, 2012) (dismissing NYCHRL claims where plaintiff did not "actually allege in the complaint that he was fired for discriminatory reasons"); *see also supra* Part II.B.1-4. The Court consequently recommends that all claims brought pursuant to NYCHRL alleging race, gender, color, or disability discrimination be dismissed.

> **6.     Moore's Hostile Work Environment Claims Should be Dismissed to the Extent They Arise from Allegations of Race, Color, Gender, or Disability Discrimination**

Although Moore contends that "Defendants do not seek dismissal of [his] claims based on . . . hostile work environment," Pl.'s Response at 1-2, Defendants move to dismiss the TAC in part on the grounds that "Plaintiff fails to set forth a plausible claim of race, color, or gender discrimination" or "plead facts sufficient to sustain a disability discrimination claims [sic]." Motion to Dismiss at 1-2. The Court therefore reads Defendants' motion to request dismissal of all claims arising from Moore's allegations of race, color, gender, and disability discrimination, including any claims that a hostile work environment arose out of this alleged discrimination. *See, e.g.*, TAC ¶¶ 2, 3, 62, 110, 116, 122, 173, 174, 177.

In order to support a claim that a defendant violated Title VII by creating a

hostile work environment based on a plaintiff's race or gender, "a plaintiff must plead facts tending to show 'that the complained of conduct . . . creates such an environment because of the plaintiffs' . . . protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). "Even when a plaintiff establishes that [he] was exposed to an objectively and subjectively hostile work environment, '[he] will not have a claim unless [he] can also demonstrate that the hostile work environment was caused by animus towards [him] as a result of [his] membership in a protected class.'" *Bermudez*, 783 F. Supp. 2d at 578-79 (quoting *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)) (internal alteration omitted). This is also true for claims under Title VI, Section 1981, Section 1983, the ADA, the Rehabilitation Act, NYSHRL, and NYCHRL. *See, e.g.*, *Valentin v. Fox Bus. Network*, 2016 NY Slip Op 30372(U), 2016 N.Y. Misc. LEXIS 699, at *23 (Sup. Ct., N.Y. Cnty. Mar. 3, 2016) (applying same standard of analysis in hostile work environment case as an analogous claim under Title VI) (citing *Patane*, 508 F.3d at 113); *Bermudez*, 783 F. Supp. 2d at 578-79 (Section 1981 and 1983); *Davis v. Vermont*, 868 F. Supp. 2d 313, 323 (D. Vt. 2012) ("Courts analyze hostile work environment claims under the ADA, and therefore the Rehabilitation Act, using the same standard applied in Title VII hostile work environment claims.") (citing *Behringer v. Lavelle Sch. for the Blind*, No. 08-CV-4899 (JGK), 2010 WL 5158644 (S.D.N.Y. Dec. 17, 2010)).

Accordingly, because Moore has not adequately set forth facts to support a

claim of discrimination because of his race, color, gender, or disability as required under Title VII, Title VI, Section 1981, Section 1983, the ADA, the Rehabilitation Act, NYSHRL, or NYCHRL, the Court recommends that his corresponding hostile work environment claims pursuant to these causes of action be dismissed as well. *See supra* Part II.B.1-5.

### 7. All of Moore's Remaining Claims Against Individual Defendants Pinnock, LeGoff, and Brown Should Be Dismissed

Defendants also contend that all claims brought against Defendants Pinnock, LeGoff, and Brown should be dismissed due to Moore's failure to set forth allegations establishing any actionable conduct by these three Defendants. Defs.' Mem. at 20.

#### a. Moore's Claims Against Defendant Pinnock

Moore's only allegations with respect to Defendant Pinnock are that she interviewed him in January 2013 for a transfer position that he was not awarded and that she leaked information to various co-workers regarding his EEOC complaints. TAC ¶¶ 48, 84. Moore claims that these acts were intended to intimidate and retaliate against him. *Id.*

However, the Court finds that all potential claims arising from Moore's allegations of Pinnock's involvement in his transfer interview were settled and released by Moore in the March 22, 2013 settlement agreement. *See, e.g.*, TAC ¶¶ 45, 47-48; Defs.' Mem. at 20-21; Defs.' Reply at 8; Fain Decl., Ex. B (General Release signed by Plaintiff and dated March 22, 2013). The general release to the March

2013 settlement provided that Moore "release[d] and discharge[d] the respondent [the DOC], [the City], their successors, or assigns, and all past and present officials, employees, representatives and agents of [the City] and [the DOC] (collectively the 'Released Parties'), from any and all claims, liabilities or causes of action which were or could have been asserted by [Moore] against any of the Released Parties based on any act, omission, event, or occurrence occurring from the beginning of the world up to and including the date of the execution of this release, including, without limitation, any and all claims which were or could have been alleged by [Moore] in the [previous EEOC] proceedings arising out of the events alleged in the complaints in those proceedings." Fain Decl. Ex. B.[13]

Consequently, Moore's "hostility, retaliation, and discrimination" claims against Defendant Pinnock can only be supported by his allegation "[u]pon information and belief" that she leaked information regarding his confidential EEOC complaints. *See* TAC ¶ 84. The Second Circuit has ruled that pleading on information and belief in employment discrimination suits can suffice to meet the

---

[13] Moore refers to this settlement agreement in his TAC. *See* TAC ¶ 45. On a motion to dismiss, the Court may consider any "statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Moreover, district courts are not constrained from taking settlement agreements into account at the motion to dismiss stage and, instead, "affirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6)." *WSP USA Corp. v. Marinello*, No. 13-CV-4591 (PKC), 2013 WL 6704885, at *3 (S.D.N.Y. Dec. 19, 2013) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Tromp v. City of New York*, 465 F. App'x 50, 51-52 (2d Cir. 2012)).

relevant plausibility standard when the relevant facts are particularly within the possession, knowledge, and control of the defendant. *See, e.g.*, *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010); *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). However, allegations "upon information and belief" fail to state a claim when a plaintiff does not support them with a statement of facts that create a plausible inference of their truth. *See, e.g.*, *Twombly*, 550 U.S. at 551-53 (declining to take as true allegations based "upon information and belief" that defendants "have entered into a contract, combination or conspiracy to prevent competitive entry . . ." where plaintiff failed to plead adequate facts to substantiate these claims); *Staten v. City of N.Y.*, No. 14-CV-4307 (ER), 2015 WL 4461688, at *5 (S.D.N.Y. July 20, 2015) (allegations upon information and belief "must be accompanied by a statement of the facts upon which the belief is founded;" pleadings "based upon information and belief [are] insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions") (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006); *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 318 (S.D.N.Y. 2015) ("Although the plaintiff is entitled to plead facts upon information and belief, she has failed to accompany her allegations with a statement of the facts upon which the belief is founded. Accordingly, because the plaintiff has pointed to no information that would render her belief [of the discriminatory adverse employment action] anything more than a conclusory assertion, the court finds that she has failed to state a claim . . . .")

(quoting *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312 (ER), 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) (internal alterations omitted).

Here, Moore fails to plead any facts that would support his allegations that, on information and belief, Defendant Pinnock leaked information about his EEOC complaints. The Court accordingly recommends dismissal of all claims against Defendant Pinnock. *See Munoz-Nagel*, 2013 WL 1809772, at *6 (dismissing claim on grounds that plaintiff's pleadings on information and belief were conclusory and unsubstantiated by the record).

### b.    Moore's Claims Against Defendant LeGoff

As to the claims brought against Defendant LeGoff, Moore has not alleged her personal involvement in any of the adverse employment actions he describes. Moreover, Moore explicitly concedes that he has "listed actions taken by all Defendants with the exception of Defendant LeGoff." Pl.'s Response at 20.

"It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Magnotta v. Putnam Cty.*, No. 13-CV-2752 (GBD) (GWG), 2014 WL 705281, at *8 (S.D.N.Y. Feb. 24, 2014) (internal quotation marks omitted); *see also Hobbs v. Police Officers of N.Y.*, No. 10-CV-5717 (SHS) (HBP), 2014 WL 502030, at *8 (S.D.N.Y. Feb. 6, 2014); *Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913 (AT), 2013 WL 5295089, at *8 (S.D.N.Y. Sep. 17, 2013). For this reason, the Court recommends that all claims brought against Defendant LeGoff be dismissed.

58

c.     **Moore's Claims Against Defendant Brown**

Defendants also maintain that Moore has not asserted any cognizable

discrimination or retaliation claim against Defendant Brown. Defs.' Mem. at 22.

They argue that the Court should dismiss all claims against Brown because Moore

fails to allege that Brown "(i) took adverse action against Plaintiff; (ii) had any

knowledge with respect to Plaintiff's prior history of complaints; (iii) or harbored

any discriminatory animus toward Plaintiff." *Id.* Even drawing all reasonable

inferences in his favor, the Court finds that Moore's allegations do not support a

plausible inference that Defendant Brown aided and abetted, or directly

participated in conduct amounting to, discrimination or retaliation.

Of the claims asserted in the TAC, Moore could support an assertion that

Brown was individually liable for retaliation perpetuated against Moore only by

alleging Brown's personal involvement in the adverse actions taken against him

pursuant to Section 1983 or by setting forth facts supporting an aiding and abetting

theory pursuant to NYSHRL or NYCHRL. *See supra* Part II.B.3, II.B.5. Because

the Court has found that Moore has failed to sufficiently plead his Section 1983,

NYSHRL, and NYCHRL claims of race, gender, and disability discrimination

against all Defendants, including Brown, the only remaining claims at issue against

Brown are Moore's allegations of religious discrimination and retaliation. *See supra*

Part II.B.1-6.

Moore claims, "[u]pon strong information and belief," that "Brown was

noticed about, and participated in, the systemic discrimination that occurred

59

against Plaintiff." TAC ¶ 28. However, Moore's only specific allegations with respect to Brown involve the June 19, 2013 incident in which Moore claimed that Brown lied about being threatened by him. *See* TAC ¶¶ 63-68. Moore's TAC asserts that, as a result, Moore was subjected to an unfairly-conducted investigation, a mental evaluation, an attempt to confiscate Moore's firearm, alterations in his work schedule, and trumped-up disciplinary charges that were the basis of a subsequent transfer denial. *See supra* Part I.A.3-4. However, at no point did Moore allege that these claimed discriminatory or retaliatory actions directly involved conduct or were the result of decisions attributed to Brown. *See id.* Instead, the TAC identifies Defendant Wettenstein as the person behind all of these adverse actions. On this record, Brown cannot be found to have aided and abetted or to have been personally involved in these employment decisions. *See, e.g., Fried v. LVI Servs., Inc.,* 10-CV-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) ("[T]o find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation.") (internal quotation marks omitted); *Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ. Ltd.,* 10-CV-2249 (LTS), 2011 WL 666187, at *27 (S.D.N.Y. Feb. 9, 2011) ("An individual may be held liable for aiding and abetting violations of NYCHRL and NYSHRL if he participates directly in discriminatory acts alleged by the Plaintiff.").

Even if the Court were to credit Moore's claim, made for the first time in his response to Defendants' motion, that Brown filed "false disciplinary charges . . . against Plaintiff," Pl.'s Response at 18, and even if the Court found this conduct to

be a materially adverse employment action, Moore has alleged no facts to support
an inference that Brown did so with a discriminatory or retaliatory motive against
Moore. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206-07
(2d Cir. 2006) (detailing the conditions, scenarios, and types of employment actions
that are deemed sufficiently disadvantageous to constitute an adverse action);
*Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459 (JMF), 2013 WL 754710, at
*8 (S.D.N.Y. Feb. 28, 2013) (Although the evidence might suggest that the
individual defendant took hostile actions towards the plaintiff, "[p]ersonal animus,
however, is insufficient to establish a claim under Title VII, the NYSHRL, or the
NYCHRL.").

Any of Moore's other allegations that Brown was aware of and participated in
the systemic discrimination against him are too conclusory to support any claims of
discrimination or retaliation against Brown. The Court therefore recommends the
dismissal of all claims brought against Defendant Brown.

### 8. Given the Liberal Pleading Standards of Rule 15(a), Moore Should Be Granted Leave to File a Fourth and Final Amended Complaint

While it is a close call, and the Court is uncertain whether Moore can
adequately cure the many deficiencies in the TAC and plead facts to support its
many unsubstantiated and conclusory allegations, in view of the liberal pleading
standards under Rule 15(a) and the procedural history of this case, the Court
recommends that Moore's request for leave to amend be granted.

61

As to the factors underlying this recommendation, the Court finds it significant that Moore proceeded as a *pro se* litigant until two months before he filed the TAC. *See supra* Part I.B. Moore's prior complaints, which were drafted *pro se*, were untested by motion practice and, as such, this marks the first occasion that the Court has critically considered the substance of his pleadings. Although the Court issued an Order granting Moore leave to amend and instructing him to state "the relevant facts supporting each claim against each defendant named in the amended complaint," this Order was issued *sua sponte* and without an evaluation as to the sufficiency of Moore's factual pleadings supporting his discrimination claims. *See* November 20 Order, at 1-5. His prior amended complaints were essentially identical to his initial filing with respect to the facts alleged therein, and were submitted upon direction of the Court for the limited purpose of properly naming suable Defendants and asserting causes of action that would permit individual liability. *See* Complaint; First Amended Complaint; Second Amended Complaint; November 20 Order; November 25 Order. Therefore, the TAC marks the first substantial and substantive amendment of Moore's initial claims and allegations as well as the only version of his complaint which had the benefit of counsel.

However, the Court notes that Moore has now had the opportunity to amend and refile his complaint on three separate occasions. In light of that fact and an obligation not to unduly delay resolution or prejudice the opposing parties, *see*

*Foman* 371 U.S. at 182, the Court recommends that Moore be granted leave to re-plead and file one final version of his complaint.

If permitted to further amend, the Court encourages Moore to set forth facts that genuinely and specifically lend support to his heretofore unsubstantiated claims of race, color, gender, and disability discrimination. However, it should go without saying that any amendments must comply with the strictures of Rule 11,[14] and should not be put forth unless they do so. Moore's ensuing submission should thus be careful to avoid broad and conclusory statements of law masquerading as factual allegations, and must allege clear connections that plausibly suggest that the alleged adverse actions were taken against him because of his protected status. *See Cosby v. Russell*, No. 10-CV-0595 (TJM) (DEP), 2012 WL 7678160, at *13 (N.D.N.Y. Nov. 20, 2012), *adopted by* 2013 WL 936588 (N.D.N.Y. Mar. 11, 2013) ("Any further amended complaint . . . must include factual allegations describing the role of each named defendant with sufficient clarity to permit the court to assess whether a plausible claim has been stated against them."). With respect to the Individual Defendants, any further pleading must allege facts demonstrating the

---

[14] If amending the complaint further, Moore should also eliminate the myriad typographical and grammatical mistakes littered throughout the current pleading. *See, e.g.*, TAC ¶¶ 4 ("Plaintiffs"), 5, 12 ("members"), 34 ("know" not "known"), 39 ("Defendants. Defendant's."), 41 ("Officers"), 45 ("my"), 46 ("posses"), 48 ("intended intimidate"), 49 ("an"), 51 ("its" "their"), 55 ("raised issue"), 56 ("Plaintiff writer"), 60 ("are"), 62 ("Captains"), 63 ("is to"), 65 ("rue"), 67 ("leading led"), 70 ("he permission"), 81 ("if"), 90 ("officially retirement"), 94 ("MOORE' application", "reproduce"), 101 ("posses"), 102 ("MOORE' application").

specific participation of those persons in any alleged discriminatory or retaliatory actions.

## III.  CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' partial motion to dismiss the TAC be granted as to all of Moore's claims against the DOC and Defendants Pinnock, LeGoff, and Brown; Counts I, II, IV, and IX to the extent they allege discrimination on the basis of race, color, or gender against any Defendants; and Counts III, V, VI, VII, and VIII in their entirety.  In addition, the Court recommends that Moore be given leave to amend and file a fourth (and final) amended complaint by a date certain.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections (or responses to objections) must be directed to Judge Daniels.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson,*

64

*Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     New York, New York
           January 3, 2017

JAMES L. COTT
United States Magistrate Judge